31 N.J. Super. 308 (1954)
106 A.2d 318
WILLIAM E. GLOVER, PLAINTIFF-RESPONDENT,
v.
SIMMONS COMPANY, DEFENDANT-APPELLANT, AND DANIEL LEEDS MILLER, INC., PINGRY SCHOOL AND BOARD OF REVIEW, DIVISION OF EMPLOYMENT SECURITY, NEW JERSEY DEPARTMENT OF LABOR AND INDUSTRY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 7, 1954.
Decided June 28, 1954.
*310 Before Judges EASTWOOD, FREUND and FRANCIS.
Mr. Nicholas Conover English argued the cause for the appellant (Messrs. McCarter, English & Studer, attorneys).
Mr. Clarence F. McGovern argued the cause for the respondent Board of Review, Division of Employment Security.
The opinion of the court was delivered by FRANCIS, J.A.D.
The question here is whether an employee, who is a member of a labor union which negotiated a collective bargaining agreement with his employer for vacations with pay after certain periods of service, is entitled to unemployment compensation when the plant is closed down for vacation purposes in accordance with the contract and his period of employment is not long enough to qualify him for a paid vacation.
Respondent is a member of the Upholsterers' International Union of North America, A.F. of L., and at the inception of his employment with appellant he signed an authorization to the union to represent him "for the purpose of collective *311 bargaining in respect to rates of pay, wages, hours of employment and other conditions of employment."
An agreement was consummated between the union and the employer which, among other things, provided for paid vacations of one week for employees with one to five years' service, of two weeks for those with five or more years, and of three weeks for those with at least 15 years. It stipulated further that those who were entitled to one week would take the vacation for 1953 during the week beginning July 6; those with two weeks would be off duty for two weeks beginning July 6; and those whose service qualified them for three weeks would take the first two during the same two weeks of July and the third at a time to be selected by management.
The plant shut down July 6, 1953, for the two-week vacation period. Glover, who had been employed for less than a year and so was not qualified for vacation with pay, was notified that he was being laid off for the two weeks.
During the lay off period he undertook to find other work and the Board of Review found as a fact that he was "able to work, was available for work, and sought work actively." At the end of the two weeks, he returned to appellant's employ and has continued to work there.
The Board of Review concluded that he was unemployed and eligible for benefits.
On this appeal the employer contends that Glover was voluntarily unemployed under section 5(a) of the Act, N.J.S.A. 43:21-5, and so disqualified because the union, acting as his representative, voluntarily agreed for him that he would not be entitled to a vacation and that the plant would be shut down for the purpose of vacations during the period in question. Consequently, the claim is that the shutdown was with his consent and as the result he was not involuntarily unemployed.
The effect of the argument is that by engaging a union to represent him in dealing with the employer as to conditions of employment, an employee either authorizes in *312 advance a waiver or release of his unemployment benefits under the act if the union deems it advisable to do so, or ratifies such a waiver or release if he joins the employer's service during the life of the bargaining agreement. But this cannot be done. Section 15 expressly declares that "Any agreement by an individual to waive, release, or commute his rights to benefits * * * shall be void." N.J.S.A. 43:21-15. The Legislature thus established the public policy of our State and the courts should not allow it to be circumvented indirectly, no matter with what good faith that result is attempted by the employer and a labor union. Cf. Campbell Soup Co. v. Board of Review, Division of Employment Security, 13 N.J. 431 (1953).
Obviously, if there were no contract with the union and the employer closed the plant in order to effectuate a policy of giving vacations to employees with a year's service, unqualified employees would be involuntarily unemployed during the shutdown period and so entitled to unemployment benefits. To say that the union can give up these rights even in order to achieve benefits for the majority of the workers is to fly in the face of a forcefully expressed public policy. In our judgment the true effect of section 15 is to remove the possibility of waiver or release of such benefits from the area of collective bargaining.
Under the circumstances, Glover occupied the status of an involuntarily unemployed person and was qualified for benefits, since he earned no wages during the period for which the claim was made. N.J.S.A. 43:21-19(m) (1).
Our conclusion would be the same even if the statute did not contain the non-waiver provision. Although the precise question has not arisen in New Jersey as to the effect of a bargaining contract, such as we have here, on the right to unemployment compensation of an employee without enough seniority to warrant a paid vacation, out-of-state authorities are in conflict on the subject. Some take the position that persons who do not meet the contract requirements for vacation are voluntarily unemployed because they consented *313 through their union to the plant shutdown. Others take the more realistic view that employees without right to vacation under the contract are out of work through no fault of their own and therefore entitled to unemployment benefits. The various cases on both sides of the problem are set forth in an annotation in 30 A.L.R.2d 366, 374-376. We believe that the latter view is more consonant with the spirit of our unemployment compensation law. In this connection it is interesting to note that in Massachusetts and Washington where the contrary rule was adopted, the legislature subsequently amended the act to secure coverage for employees in such cases. 30 A.L.R.2d 375, 376, footnotes; Schettino v. Administrator, 138 Conn. 253, 83 A.2d 217 (Sup. Ct. Err. 1951).
However, the employer suggests that Glover was not available for work because he was laid off for two weeks only and returned to his employment when the plant reopened. The statutory test of eligibility of an unemployed person is whether "He is able to work, is available for work, and has demonstrated that he is actively seeking work." N.J.S.A. 43:21-4. The Board of Review found that respondent wanted work, that he did not desire to be idle and that he satisfied the requirements of section 4 of the act. Our review of the evidence has not revealed cause to overrule the finding.
The employer urges also that since Glover knew he was to go back to work and did in fact return he is barred from benefits as a matter of law. The same argument was made in American Bridge Co. v. Review Board of Indiana Employment Security Division, 121 Ind. App. 576, 98 N.E.2d 193, 196 (App. Ct. 1951), where the court said:
"Appellant advances the further argument that since the express purpose of the Employment Security Act is to avoid the serious menace of economic insecurity, that a vacation without pay is not economic insecurity within the compass of the legislative declaration of public policy. To the worker who depends upon his weekly paycheck for his daily bread, it would appear to be tortuous reasoning *314 indeed to say that a vacation without pay does not constitute `economic insecurity.'

* * * * * * * *
Since the `encouragement of desirable stable employment' is contained within the legislative declaration of policy and purpose of the Indiana Employment Security Act, it can hardly be seriously contended that the Legislature intended to adopt any doctrine of a necessity for permanent severance of the employment relation. In order to have stabilization of employment, both for industry and workers, the fact that a worker expects to resume his previous employment should and does not, under the Indiana Employment Security Act, constitute a bar to his being unemployed, under the act, and entitled to benefits if otherwise qualified."
With this reasoning we agree. See also Golubski v. Unemployment Comp. Board, 171 Pa. Super. 634, 91 A.2d 315, 30 A.L.R.2d 362 (Super. Ct. 1952).
The judgment is affirmed.