INTERNATIONAL UNION OF ELECTRI-
CAL, RADIO AND MACHINE WORK-
ERS, LOCAL UNION NO. 782, AFL–CIO,
et al., Appellants,

v.

TEXAS EMPLOYMENT COMMISSION and
General Electric Company, Appellees.

No. 7252.

Court of Civil Appeals of Texas.
Texarkana.

April 4, 1961.

Rehearing Denied May 9, 1961.

Sam Houston Clinton, Jr., Austin, for appellant.

Ramey, Brelsford, Hull & Flock, Tyler, C. K. Richards, Asst. Atty. Gen., for appellee.

## PER CURIAM.

This suit was brought in the District Court of Smith County, Texas, by appellants, International Union of Electrical, Radio and Machine Workers, Local Union No. 782, AFL–CIO, (IUE) and 99 individuals, to review a decision of the Texas Employment Commission (TEC) denying unemployment compensation benefits to 99 employees of General Electric Company's (GE) Tyler, Texas, plant for the week beginning August 4 and ending August 10, 1957. To this action TEC and GE were joint defendants. (This GE plant was shut down for three weeks and all claimants were paid unemployment compensation benefits for the last two weeks.) The trial court rendered a judgment, which among other things, (1) dismissed 12 claimants who did not reside in Smith County, Texas, on the grounds that it did not possess jurisdiction over them, (2) dismissed IUE as a party plaintiff on the grounds that it was neither a necessary nor a proper party to the suit, (3) denied relief to 80 claimants on the grounds that they were not totally unemployed, and (4) denied relief to 7 other claimants on the grounds that they were voluntarily unemployed and disqualified from receiving benefits. Plaintiffs have appealed from the judgment of the trial court.

Appellees for the first time on appeal raise what they consider to be "fundamental error", and have asked that the cause be dismissed for lack of jurisdiction. They argue that since each appellant's claim was less than the jurisdictionally required $500, that the trial court lacked jurisdiction to pass on appellants' claims. Each of the 99 claims were in the neighborhood of $25 each. The aggregate of the 99 claims or a substantial number of them would exceed the jurisdictional amount of $500.

Article 1906a, V.A.C.S., provides in part as follows:

"Where two or more persons originally and properly join in one suit, the suit for jurisdictional purposes shall be treated as if one party were suing for the aggregate amount of all their claims added together, exclusive of interest and cost; provided that this statute shall not prevent jurisdiction from attaching on any other ground. * * *

Acts 1945, 49th Leg., p. 543, ch. 329, § 1."

Appellees rely upon three cases which hold that the claims of different parties joined in a suit cannot be added together for jurisdictional purposes. The first of these, Long v. City of Wichita Falls, 1944, 142 Tex. 202, 176 S.W.2d 936, was decided the year before Art. 1906a became law, and is therefore not controlling here. The other two cases, Southwestern Drug Corp. v. Webster, Tex.Civ.App.1951, 246 S.W.2d 241 and Kasishke v. Ekern, Tex.Civ.App. 1954, 278 S.W.2d 274, both rely upon Long v. City of Wichita Falls, neither of them mentions Art. 1906a, neither of them have any subsequent writ history, and are factually distinguishable from the case at bar.

Plaintiffs' suit is ostensibly brought as a class suit, the petition containing averments to that effect; however the 99 individual plaintiffs constituting the class are specifically named. Appellees levelled no special exceptions to the pleading contending that plaintiffs' suit was not a class suit, although on appeal for the first time they contend that plaintiffs' suit is essentially a joint suit rather than a class suit. It is our view that the 99 individual claimants could properly join in the instant suit (irrespective of whether it was a class suit, joint suit, or a suit containing elements of the two), and that under Art. 1906a, V.A.C.S., the amounts of the 99 claims could be added together and since they exceeded $500, the amount in controversy was within the jurisdiction of the trial court. Appellees' motion to dismiss is overruled.

Appellants' first three points of error are based upon the trial court's judgment that Wilmer D. Evans and eleven other named claimants, none of whom resided in Smith County, but who resided in other counties in Texas, "were not entitled to prosecute their appeals in the District Court of Smith County, Texas, under the provisions of Art. 5221b–4(i) Vernon's Civil Statutes", and that the trial court "was without jurisdiction to hear or determine such appeals."

Art. 5221b–4(i) V.A.C.S., provides in part as follows:

"(i) Court Review: Within ten (10) days after the decision of the Commission has become final, and not before, any party aggrieved thereby may secure judicial review thereof by commencing an action in any court of competent jurisdiction in the county of claimant's residence against the Commission for the review of its decision, in which action any other party to the proceeding before the Commission shall be made a defendant, provided that if a claimant is a non-resident of the State of Texas such action may be filed in a court of competent jurisdiction in Travis County, Texas, or in the county in Texas in which the last employer has his principal place of business, or in the county of claimant's last residence in Texas. Such trial shall be de novo. * * *"

Appellants argue that the above referred to statute prescribes *venue* rather than *jurisdiction,* and that such venue provisions can be waived. They further contend that since the trial court overruled defendants' special exception No. II, without TEC or GE excepting thereto or preserving a point thereon, and the trial court, after plaintiffs had filed a trial amendment setting up the residences of all of the 99 individual claimants, then, without any pleading raising it, found that it was without *jurisdiction* to determine the appeals of Wilmer D. Evans and 11 other named plaintiffs (non-residents of Smith County, Texas, but residents of other Texas counties) and dismissed with prejudice said parties as plaintiffs, that no question of *venue* was properly raised before the trial court, and that any question of *venue* with respect to Wilmer D. Evans and the other 11 named plaintiffs who were dismissed, was waived.

Appellants in their brief with respect to their first three points also make the following arguments:

"Finally, how are TEC and GE to be harmed or prejudiced by having these

twelve non-resident claimants included in a determination on the merits? The facts were already developed as to each of them. The common questions of fact and law apply equally to this small minority as to the large majority of claimants. Just as this Court pointed out concerning a similar technical point involving the time of making an appeal under Section 6(h) and (i) in TEC and Broadus v. Stewart Oil Co. (Texarkana, 1953), 261 S.W.2d 764, affirmed 153 T. 247, 267 S.W.2d 137.

" '*No injury is shown* in the alleged premature filing of the appeal from the decision of the Commission.'

"Of course, there could be no injury to TEC or GE. To the contrary, all claimants being before the Court, in the county where GE has its principal place of business in Texas (one of the counties where suit may be brought *by a non-resident of the State!*), the convenience was mutual to all parties. The alternative was separate suits in the following counties: Smith, Bowie, Bexar, Wood, Henderson, Van Zandt, Rusk.

"By bringing the suit as a class action plaintiffs avoid a multiplicity of suits of which the law and courts usually disapprove.

"Being a matter of venue, the provisions of Section 6(i) are for the benefit and convenience of plaintiffs, privileges which can be waived. See 43–B, Tex.Jur. 123 'Venue' § 12, where it is stated:

" 'Specifications as to the county in which suit is to be brought are in general *mere privileges granted which may be waived* like other privileges. Thus, while the defendant is generally entitled to be sued in the county of his residence, yet he may waive that privilege when the court of another county has jurisdiction of the subject matter; and exceptions to this general rule, providing for suit elsewhere than in the county of the residence of the defendant, are ordinarily only privileges granted to the plaintiff.'

"Obviously, by filing suit in Smith County as a class action, those claimants and plaintiffs who resided in some other county waived the 'privilege' of bringing suit in the county of their residence. The reason is perfectly clear. In the instant cause all claimants may have their rights determined without the necessity of a multitude of different lawsuits.

"Accordingly, we earnestly urge that the Trial Court's action in dismissing 'with prejudice' Wilbur D. Evans and other non-residents of Smith County named in judgment was erroneous and should be reversed."

■ We sustain appellants' first three points. We therefore will hereinafter consider the merits of the respective claims of Wilmer D. Evans and the other 11 named plaintiffs who were dismissed from the cause.

Appellants, by their 4th, 5th and 6th points contend to the effect that the trial court erred in dismissing the union, IUE, as a plaintiff on the grounds that it was neither a necessary nor a proper party to the cause. Appellants contend in this connection that IUE has a justiciable interest in the case, first, because it is the collective bargaining representative of the claimants involved, and, second, because IUE itself, rather than the GE workers, was the party to the collective bargaining agreement which is involved in this case.

■ The general rule applicable here was stated in Yett v. Cook, 115 Tex. 205, 281 S.W. 837, 841:

"It is a rule of universal acception that to entitle any person to maintain an action in court it must be shown that he has a justiciable interest in the subject matter of the litigation, either in his own right or in a representative capacity."

■ Art. 5221b-4(i), V.A.C.S., under which this action was instituted, expressly confers the right of action upon the claimants for unemployment compensation benefits and upon no other party. If the claimants win and receive benefits such benefits will belong to them personally and IUE would have no pecuniary interest in such benefits. Also IUE is not a "representative" in the sense in which that term is used in Yett v. Cook, supra. Nor does the fact that IUE argued the cause of claimants before TEC, give it any additional right to join as a party plaintiff in this suit. The three cases cited by appellants, in which a union was deemed a proper party, did not involve any situation similar to the case at bar, but were cases brought on other matters under the Uniform Declaratory Judgments Act (Art. 2524-1, V.A.C.S.), which requires that "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration * * *.", and consequently do not apply to the case at bar.

The union is not a necessary or a proper party plaintiff in this suit by virtue of the fact that IUE was a party to the collective bargaining agreement with GE which pertained to the 99 claimants at the time the original cause of action arose. This suit was brought to secure unemployment compensation benefits under Art. 5221b, V.A.

C.S., and not to enforce any rights granted in the GE–IUE contract. The collective bargaining agreement is merely one of the conditions to be considered in determining whether it is relevant to the determination of the main question as to whether the 99 claimants are entitled to benefits under the Unemployment Compensation Act.

■ It is generally true that in matters of joinder and misjoinder of parties, the trial courts have a broad discretion. Royal Petroleum Corporation v. Dennis, Tex., 332 S.W.2d 313.

It is our view that IUE was neither a necessary nor a proper party to this suit, and that the trial court did not abuse its discretion in dismissing IUE from the suit. Appellants' 4th, 5th and 6th points are overruled.

Having disposed of the procedural problems we will now consider the claims of the 99 claimants on their merits.

The GE plant was shut down for a period of three weeks. TEC in a 2 to 1 decision found that the 99 claimants here involved were not *eligible* for unemployment compensation benefits for the first week of the shutdown, basing their ruling largely upon their construction of the applicability of a collective bargaining contract between IUE and GE with respect to vacation periods, portions of which contract appear below.[1]

1. "7. Scheduling of Vacations
   "(a) At Time of Annual Shutdowns
   "Those Works shutting down annually shall consider the vacation season for eligible employees to run concurrently with the shutdown period. Employees entitled to a third week of vacation will schedule this week immediately before or after the shutdown period. Exceptions for certain departments or individuals by reason of the requirements of the business shall be at the Manager's discretion.
   "As the practice of annual shutdown is applied in the several Works which, have not followed this practice previously, the Company will discuss the situation with the Local as far in advance as possible.
   "(b) Outside of Shutdowns

"Vacations, where there is no annual shutdown, will be scheduled to conform to the requirements of the business.
   "(c) Postponement or Division of Vacation
   "It will not be permissible to postpone vacations from one year to another, or to omit vacations and draw vacation pay allowances in lieu thereof, except with the written approval of the Manager. No vacation shall be divided unless it is of two weeks or more duration, in which case it may, with the consent of the Manager, be divided.
   "8. Time of Vacation Payment
   "Except as otherwise provided in this Article, vacation allowances shall be paid to an employee on or about the last day worked by him prior to the beginning of

TEC held with respect to the 99 claimants here involved that all of those claimants whose service with GE had reached the period of one year prior to August 2, 1957, and were entitled to vacation with pay for one week, or could reach the period of one year during the year 1957 if they remained in the employ of GE for the required length of time after the shutdown, at which time such employees would receive pay for the vacation pay for the vacation period to which they would be entitled, in addition to their regular wages, were ineligible to receive unemployment compensation benefits for the first week.

Most of the material facts were stipulated. It was specially stipulated in effect at the beginning of the stipulation that the facts stipulated were true and correct, and that additional evidence *not in conflict with the facts so admitted* could be offered by either party subject to legal objections. The last paragraph of the stipulation reads in part as follows:

"The sole issue presented to this Court is the right and entitlement of the plaintiffs to receive unemployment compensation benefits for the week beginning August 4, 1957, and ending August 10, 1957, under the provisions of the Texas Unemployment Compensation Act, and none of the parties hereto shall be prejudiced in any other proceeding by reason of the compliance or non-compliance of the plaintiffs with the provisions of sub-sections (a), (b), (c), (d), and (e) of Article 5221b-2, V.A.C.S., or sub-sections (a), (b), (c), (d) and (e) of Article 5221b-3, V.A.C.S."

TEC in a single decision disposed of all the 99 claimants here on the ground that they were *"ineligible"* to receive unemployment compensation benefits, yet at the same time found as a fact that the shutdown of the GE plant was not primarily for "vacation purposes". The trial court disposed of the 99 claimants in the following manner: (1) dismissed Wilmer Evans and 11 others who did not reside in Smith County, Texas, which action we have hereinbefore held to be erroneous, (2) found to the effect that Don E. South and 79 other named persons had received payment of "wages" for the first week of the shutdown, and therefore were held not "totally unemployed" within the meaning of the Unemployment Compensation Act, and (3) that James V. Landrum and six other named persons were "voluntarily unemployed" and were, therefore, "disqualified" under the Act. The trial court also found that the decision of TEC was supported by substantial evidence; however, while TEC found that the plant shutdown was not primarily for vacation purposes, the trial court found that the GE plant *"was partially shut down for a vacation period."*

James V. Landrum and six other named persons similarly situated voluntarily left the service of GE after the shutdown. These seven claimants had not worked long enough to be entitled to a paid vacation for the period from August 4 to August 10, 1957; they voluntarily resigned thereafter and thereafter received no vacation pay, resigning before they became eligible for vacations with pay. The record also does not show that these 7 claimants had left their work voluntarily "without good cause connected with [their] work." Art. 5221b-3(a) V.A.C.S. The trial court held that these 7 claimants were "voluntarily unemployed" and therefore "disqualified" under the act. The recent decisions of the Supreme Court of Texas in the Amlin,[2]

---

the vacation scheduled for him. An employee who takes his vacation prior to the date upon which he becomes eligible, will receive payment (computed in accordance with Section 6 above) after he becomes eligible. Additional days or days for which an employee may qualify later in the year may be taken at the time

of the regular vacation and payment for such time (computed in accordance with Sec. 6 above) will be made after the employee has qualified."

2. Texas Employment Commission v. Amlin, et al., Tex., 343 S.W.2d 249.

Hansen,[3] and Huey[4] cases are authority for the proposition that under the record in this case the trial court erred in holding that these above referred to 7 claimants were disqualified. In fact appellees in their supplemental brief so concede. Since the Amlin, Hansen and Huey cases are decisive on this proposition we deem it unnecessary to discuss this proposition any further. We hold that the trial court erred in its ruling with respect to Landrum and the other six named similarly situated claimants.

The other remaining claimants, including the 12 erroneously dismissed by the trial court, number 92. Out of these 92, 11 claimants (whose names are hereinafter stated) were paid vacation pay on or shortly prior to the first weeks shutdown. It was stipulated between the parties " * * * that except for the eleven claimants who received *vacation pay* for one week on August 2, 1957, no other claimant received any payment of money or remuneration from GE in or immediately before Aug. 2, 1957, with respect to the three-week period of the shutdown." (Emphasis added.) The remaining 81 claimants were paid vacation benefits after the three weeks shutdown at later dates during the year 1957. The position of appellants with respect to these 92 claimants is stated by them in their supplemental brief in part as follows:

> "Quite frankly, the holdings of Huey, Hansen, and Amlin do not control the issues as to South, et al raised by points Fifteen through Twenty-one. This is so because each of those holdings was that the claimants were not *disqualified* under Section 5(a) of the Act (Article 5221b–3(a)). Whereas the trial court (although TEC did not) found that these claimants 'received payment for the vacation period of one week', that such payments were 'wages' with the result, according to the trial court, that they were not 'totally unemployed' * * *.

"* * * * Further we have argued that the trial court, under the substantial evidence rule, erred in admitting and basing findings on Defendants' Exhibit No. 1 since it purports to contain facts arising and not in being until after the crucial date, the week of the shut down, for fixing claimants' eligibility.

"On these points, it appears that Huey, Hansen and Amlin *are* helpful. They are helpful because the Supreme Court rejects the harsh 'process of legalistic hair-splitting' and accepts the 'more realistic view' of the authorities in other jurisdictions. Specifically, in Huey, the opinion follows 'the better reasoned opinions of other states as they bear on the wording of our statute' and, in Amlin, the Court preferred to follow the Connecticut Supreme Court and 'the reasoning of the Supreme Court of New Jersey' in the two cases cited in footnote 2.

"The Teichler decision [Teichler v. Curtiss-Wright Corp., 24 N.J. 585, 133 A.2d 320] is quoted at length in Huey, page 13. The reasoning of the Supreme Court of New Jersey, which our Supreme Court preferred to follow is significant. Note the following excerpts of language from the quoted portion of the opinion:

> " 'It seems to us that a worker who is ready, willing and able to work but is left without work *and pay* * * * comes fairly within the broad coverage of the Unemployment Compensation Act * * * In either event the worker *does not receive the weekly pay check* upon which he and his family are generally dependent * * * These persons are truly without employment *during the payless shut downs*, even though they will resume when the plants reopen * * * they are justly entitled to the measure of

3. Texas Employment Commission v. Hansen et al., Tex., 342 S.W.2d 551.

4. Texas Employment Commission v. Huey et al., Tex., 342 S.W.2d 544.

protection against economic insecurity which the Unemployment Compensation Law soundly affords for the welfare of our entire society.'

In the Watson case [Watson v. United States Rubber Co., 24 N.J. 598, 133 A.2d 328], cited but not quoted, at footnote 2 of the Huey opinion, the Supreme Court of New Jersey noted that at the time of the shut down, by reason of his short period of employment, 'When the shut down occurred Mr. Watson found himself without work *and pay* * * *'

"In discussing its own statute, the Court pointed out:

" 'Nowhere in our Unemployment Commission Law is there to be found anything which suggests the exclusion of benefit payments to the payless worker who is ready, able and willing to work but is unable to obtain it because his employer's plant is shut down for a vacation period.'

"The point of these decisions is that the unemployed claimant is eligible if coincident with his unemployment he is not receiving wages. The impact of the shutdown, under the theory expressed, is to be met by compensation benefits unless the claimant doesn't need them because he is receiving 'wages.'

"In our case, the parties stipulated that 'except for the eleven claimants who received vacation pay for one week on August 2, 1957, no other claimant received any payment of money or remuneration from GE on or immediately from August 2, 1957, with respect to the three-week period of the shut down.' (SF 25, lines 5–9). In other words, as in Teichler and Watson, all but eleven of our claimants were left 'without work and pay,' did not 'receive the weekly pay check', endured a 'payless shut down' and each was during the first week of the shut down a 'payless worker.'

"Accordingly, Appellants urge that under the authorities cited in other briefs and the 'more realistic view' and 'better reasoned opinions' Don E. South et al were 'totally unemployed', that those who did receive some payment just before the shutdown did not receive 'wages' as the term is defined in the statute and applied by the Courts; and, in any event, the remaining claimants did not receive 'wages' before or during the shut down and had no assurance of ever receiving them, so that they were in all things eligible for unemployment compensation benefits.

"For the convenience of the Court we here name those in the Don E. South group who received payments before the shut down; keeping in mind that two of the total of eleven who did are not in the South group by reason of the trial court's dismissal because of their residence (Thomas N. Beall and Thomas A. Morman): Kenneth D. Martin, Donald G. Young, Henry D. Davenport, Donald Denoth, Joseph Tench, Horace Bynum, George W. Booth, Alex D. Owen, Bennie H. Thedford.

"Therefore, the judgment of the trial court as to Don E. South, et al should be reversed and judgment rendered directing TEC to approve and pay their claims for the first week of the shutdown. It is respectfully suggested that should the Court decide to affirm the judgment as to those nine or eleven who actually did receive payment before the shut down, those claimants should be identified by name."

It was also stipulated between the parties that "IUE protested the proposed shutdown pointing out that employees affected by shutdown had not been employed long enough to be eligible for vacation and vacation pay. GE asserted that operations such as maintenance work and other minor

functions would continue and that employees performing those functions who were eligible would receive their vacation pay prior to the shutdown. The union was never asked to agree to the shutdown and did not agree to it, but GE shut down the plant under Par. 7(a) as set forth in paragraph 6 of this stipulation."

West Publishing Company's headnote to the Huey case (342 S.W.2d 544) reads as follows:

"Employees who were laid off without pay during plant shutdown ordered by employer did not leave work 'voluntarily without good cause connected with work,' and hence they were entitled to unemployment compensation, even though they would have received vacation pay under union contract if they had had more seniority. Vernon's Ann.Civ.St. Arts. 5221b–3a, 5221b–17(1)."

The Hansen and Amlin cases follow the Huey case. We quote from the court's opinion in the Amlin case in part as follows [343 S.W.2d 250]:

"This is a companion case to the Huey and Hansen cases against the Texas Employment Commmission. * * * The contract between the union and the employer, the Big Smith Manufacturing Company, is different in some respects from the contracts in the Huey and Hansen cases. But as in those cases, the question is whether the union agreement disqualifies the claimants from benefits under the Texas Unemployment Compensation Act.

"The plant here in question, which manufactured wearing apparel, was closed down for a two-week period. Management had agreed with the union that those employees who had been with the plant five years would be granted two weeks of vacation with pay. Those employees who had been there from one to five years would receive one week's pay during the shutdown. Those with less than a year seniority received no pay. They were ready, able and willing to work during this period. And as in the previous cases, neither the employer nor the union objected to their obtaining employment during the layoff. During the periods for which the respective claimants sought compensation, no work was available at the plant and they received no compensation therefrom. Those who received no pay and for whom no work was available applied for employment. Upon finding none, they applied for unemployment benefits.

"The Commission and the trial court denied benefits to all claimants. The Court of Civil Appeals reversed those holdings and rendered judgment for all the claimants, holding that they had not left their work voluntarily without good cause connected with their work. 332 S.W.2d 375. We here affirm the judgment of the Court of Civil Appeals.

"As in the Huey and Hansen cases, it was stipulated that at no time did any of the claimants request or authorize the union to agree that any of them be given a vacation without pay, whether for one or two weeks or any other period of time; and the union did not do so 'except to the extent, if any, that they were bound by the contracts between the union and the employer of which all employees had notice.' It is further stipulated that all of the claimants herein were members of the Amalgamated Clothing Workers of America Local Union 665, although such membership was not compulsory, and all of the claimants were covered by the terms of the contract.

*   *   *   *   *   *

"As in the Hansen case, we believe the facts are close enough to those in the Huey case to be controlled by it. While, as noted above, there are some

differences in the agreement, we do not regard them as being strong enough to remove this case from the Huey decision.

"We recognize that there are cases from other jurisdictions, set out in the Huey opinion, which have denied recovery under facts which are similar to those present here. But we prefer to follow the holding of the Connecticut Supreme Court, whose state has a statute very much like ours [1] and the reasoning of the Supreme Court of New Jersey.[2]

"More particularly, we do not believe that Mrs. Amlin et al left their employment 'voluntarily *without good cause connected with his* (their) *work*,' so as to be disqualified under our statute. * * *

"As in the Huey and Hansen cases, it is unnecessary for us to decide whether the union agreement constituted an agreement to waive any benefits or rights under the Unemployment Compensation Act, which agreements are condemned as invalid by the Act. Article 5221b–13(a), V.A.C.S.

"The judgment of the Court of Civil Appeals is affirmed."

█ As we view the situation here involved it is our thought that the eleven claimants who were eligible for vacations on August 2, 1957, and who then actually accepted vacation pay for the period from August 4, to August 10, 1957, were not *payless* for that week; that in truth and in essence they took a paid vacation that week, and are not in a proper position to contend that they are also entitled to unemployment compensation benefits for that week as well. We hold that the trial court properly held that nine of such persons in that category, named as follows: Kenneth D. Martin, Donald G. Young, Henry D. Davenport, Donald Denoth, Joseph Tench, Horace Bynum, George W. Booth, Alex D. Owen, and Bennie H. Thedford were not entitled to unemployment compensation benefits for the week in question and that portion of the judgment of the trial court is affirmed.

. Two persons in the above referred to group of 11 people who received paid vacations on or prior to August 2, 1957 for the week in question, Thomas N. Beall and Thomas A. Mormon, were dismissed from the cause by the trial judge on the grounds that they did not reside in Smith County, Texas, which dismissal we have held to be erroneous. On the merits of the claims of Beall and Mormon we hold that they being eligible for paid vacations for the week in question, and being paid prior thereto for such vacations, were *not payless* at that time, but were on *paid vacations* and are in no proper position to also demand unemployment compensation benefits. Judgment therefore is here rendered denying the claims of Beall and Mormon for unemployment compensation benefits for the week in question.

█ The problem with reference to the 81 claimants, (Don South and other named parties) who were not then eligible for paid vacations for the week of August 4th to August 10th, 1957, and who were not given paid vacations at that time, but who later on at different periods of the year 1957 became eligible for paid vacations and were at such later periods given vacation payments, is somewhat difficult to determine. However, it is our thought that the Unemployment Compensation Act was primarily designed for the benefit of the working man, and to afford him economic relief *at the time he needed it*, and not at some future problematical time. We think the situation must be viewed as of the time that the unemployment arose, to-wit, in this instance, the week of August 4th to August 10th, 1957.

█ At that time (August 4th to August 10, 1957), these 81 claimants were not eligible for vacations or vacation pay; they were not then given any paid vacations,

they were *then jobless, workless* and *payless.* Their *then* economic needs for either a pay check or vacation pay were not then met, and at that time they could not know for certain that they would ever become eligible for vacation pay. At that time such 81 persons were clearly left "without work and pay", did not "receive the weekly pay check", endured a "payless shutdown", and each during the first week of the shutdown was a "payless worker."

After carefully considering the matter it is our best judgment that the above referred to class of 81 claimants (Don South and 80 others whose names are in the record) who were not given paid vacations at the time of the first week of the shutdown but who received vacation payments at later dates in 1957 subsequent to the three weeks shutdown, were not *ineligible* to receive benefits under the Unemployment Compensation Act for the week in question, August 4th to August 10th, 1957.

█ Of these 81 claimants the trial court erroneously dismissed 9 of them. 72 of the 81 were found by the trial court to be ineligible—the action of the trial court in holding the said 72 claimants ineligible to receive unemployment compensation benefits is deemed erroneous. As in the Huey, Hansen, and Amlin cases, we deem it unnecessary for us to reach the question as to whether the union agreement constituted an agreement to attempt to waive any benefits or rights of the claimants under the Unemployment Compensation Act, which agreements are condemned as invalid by the Act. Art. 5222b–13(a) V.A.C.S. In the *instant case* IUE protested a "payless shutdown" for the workers who were not *then* eligible for a paid vacation, and there is nothing in the record to show that these "payless workers" who were not *then* eligible for paid vacations for the week August 4 to August 10, 1957 ever agreed to accept a *then* "payless" vacation. While it is thought that it is not necessary to reach the question as to whether the union agreement with GE constituted an agreement to at-tempt to waive any benefits or rights of the claimants under the Unemployment Compensation Act, it would be our further view that if the IUE-GE agreement were to be construed as attempting to waive any rights or benefits of the claimants under the Act, then it would be invalid insofar as it at-tempted to waive any benefits or rights of the claimants under the Unemployment Compensation Act, as condemned by Art. 5221b–13(a) V.A.C.S. The judgment of the trial court in denying the claims of the above referred to persons is reversed and judgment is rendered as hereinafter more particularly stated.

The judgment of the trial court in dis-missing IUE as being neither a necessary or proper party to this suit is affirmed.

The judgment of the trial court in deny-ing the claims of the above named 9 claim-ants who were then eligible for and then received vacation pay for the week of Au-gust 4th to August 10, 1957, is affirmed. The two claimants hereinbefore named, who were erroneously dismissed from the suit by the trial court because they did not re-side in Smith County, Texas, who are in the same factual category as the 9 claim-ants who were eligible for vacation pay and then received vacation pay for the week in question, are not entitled to unem-ployment compensation benefits for the week in question, and judgment is here ren-dered denying benefits to said two claim-ants.

The judgment of the trial court denying relief to James V. Landrum and six other named persons in the same category as Landrum is reversed; the judgment of the trial court denying relief to Don South and other named persons in the same cate-gory as South is reversed. Judgment is here rendered directing Texas Employ-ment Commission to grant the claims of the 88 claimants hereinbefore referred to (con-stituting all of the claimants except the 11 claimants who were eligible for vacation pay for the week in question and who actu-ally received vacation pay for such week

shortly prior or at the time of such vacation week) provided that such claimants meet the requirements for unemployment compensation as set out in other sections of Art. 5221b V.A.C.S.

Affirmed in part and reversed and rendered in part.

On Motions for Rehearing

FANNING, Justice.

We have carefully considered the motions for re-hearing of appellants and appellees, and are of the opinion that our original disposition of the case was correct. However in our original opinion we did not discuss the question of costs and now deem it appropriate to determine the taxation of costs in this cause. The trial court taxed all costs in the court below against TEC and TEC raised no point in its brief complaining of this action, and this portion of the judgment of the trial court in taxing the costs in the court below against TEC is affirmed. TEC and GE have prayed that all costs of appeal be taxed against appellant IUE, and IUE has prayed that all costs of appeal be taxed against TEC and GE.

Art. 5221b–13(b), Vernon's Ann.Texas Civ.St., provides: "No individual claiming benefits shall be charged fees of any kind * * * under this Act by the Commission or its representatives or by any court or any officer thereof." By reason of this provision of law no costs are properly taxable against the 11 heretofore named litigants who were unsuccessful in the court below and in this court. Furthermore, none of the parties have contended that such unsuccessful individual litigants are liable for any of the costs in this cause.

After carefully considering the entire record in this cause it is our opinion that it would be just and equitable to tax four-fifths (⅘ths) of the costs of appeal against appellees TEC and GE, and that one-fifth

(⅕th) of the costs of appeal should be taxed against appellant IUE. However, as aforesaid, all costs in the court below were adjudged against TEC and TEC did not appeal from this judgment or assign any point complaining thereof, and this portion of the judgment of the trial court has been affirmed.

The motions for re-hearing of both appellees and appellants are overruled in every respect save and except for our rulings with respect to costs and the taxation thereof in the manner heretofore stated.

Motions for re-hearings overruled and costs taxed in accordance with this opinion.