Melvin Lee Bridges et al.

*v.*

Cavalier Corporation

369 S. W. 2d 548.

(*Knoxville,* September Term, 1962.)

Opinion filed July 15, 1963.

Ward Crutchfield, Glenn W. Brown, Chattanooga, for appellants.

Chambliss, Chambliss & Hodge, Chattanooga, for appellee.

Mr. Chief Justice Burnett delivered the opinion of the Court.

This case involves the claims of the appellants for unemployment compensation under sec. 50-1301 et seq., T.C.A. A Board of Review granted unemployment compensation. On certiorari the Chancellor reversed because a Texas case upon which the Board of Review granted this compensation had been reversed by the Supreme Court of Texas, and because our Act (sec. 50-1349, subd. A, T.C.A.) which was partially the basis of such finding was not in point. The claimants have appealed.

The Cavalier Corporation, a soft drink bottling company, closed down for its annual two weeks' period, during which time the appellants did not work. In accordance with the provisions of the contract between the employees, who were represented by a Union, and the company the named appellants received vacation pay for this period. The rate of pay for vacation was, as follows:

Each employee who had completed more than one year of continuous service received an amount equal to forty hours at his straight time base rate with a shift differential included.

Each employee who had completed more than five years of continuous service received eighty hours at his straight time base rate with a shift differential included.

The individual appellants in this cause were paid for their two weeks' vacation at the rate of one-half pay

during the two weeks period. In this case only men with less than five years' service are involved.

The appellants contend that they are entitled to unemployment compensation for the second week of their vacation while the company insists that they are not.

The bargaining agreement was entered into between the agent of the appellants, Allied Industrial Workers of America, AFL-CIO, Local Number 289, and the employer, Cavalier Corporation. Insofar as here applicable this agreement provides, as follows:

## ARTICLE S.
### "PAID VACATIONS

"*Section 1.* An employee will be entitled to 1 week of vacation pay each year upon completion of 1 year of continuous service and 2 weeks of vacation pay each year upon completion of 5 years of continuous service.

"Each week of vacation pay will be for 40 hours at his straight time base rate with his shift differential included.

"A first-year employee will receive his vacation pay upon completion of his 12 months of continuous service or at the vacation period, whichever comes last. His vacation pay thereafter will be issued to him at the time his vacation is taken, or on the first pay period in July if no vacation is scheduled for that year.

"*Section 2.* Lay-offs because of business conditions will not disqualify an employee for vacation pay. If fire, explosion, or some other catastrophe beyond the Company's control, however, should shut down the plant for more than 3 months, vacations will not be payable.

*"Section 3.* The vacation period will be set by the Company to fall between June 15th and September 1st. Unless business reasons dictate a specific period the preference of the employees will be followed in choosing the vacation dates.

"The dates chosen will be announced not later than May 1st.

*"Section 4.* Vacations are not cumulative and must be taken, or paid for, during each calendar year. After an employee has qualified for vacation he shall be paid for any vacation due him if, for any reason, his services with the Company are terminated after the qualifying date. In case of death of the employee such payments will be made to his widow or his legal heirs or next of kin."

Thus it is seen by this contract the company has the right to select the vacation period between June 15th and September 1st. The company complied with this provision and notices were sent out to the employees to the effect that the appliance plant vacation period would be from July 3rd to July 16th. It is also seen by a reading of this contract that the employee is entitled to one week of vacation pay upon the completion of a year of continuous service and upon the completion of five years of continuous service he is entitled to two weeks' vacation pay each year. The appellants here had not completed the required service with the company to entitle them to more than one week of vacation pay.

The Legislature in enacting the Employment Security Act (sec. 50-1301 et seq., T.C.A.) in the interest of public welfare undertook to deal with the problem of involuntary unemployment. The declaration of policy in that Act is

significant in the interpretation of the various provisions of the Act to which the ultimate result sought must be attained. Clearly, the Act was intended primarily for the benefit of those involuntarily unemployed; in other words, those who, capable of working, are prevented from doing so other than by the results of their own acts.

In the case now before us the appellants through their representative, a bargaining agent for the Union, entered into a definite agreement with the Cavalier Corporation that the vacation period each year, recognized by the parties as necessary or at least proper, should be between such and such dates, subject to certain provisions, and those having certain seniority should be entitled to such and others of other seniority to a different amount for their vacation. Those employees here, who are now appealing, received from $60.00 to $70.00 each for their vacation period. Such agreement was not for the sole benefit of the employer, but was primarily for the benefit of the employees. It is also observed from reading the portion of the contract above quoted that the fixing of the time for this annual vacation was not left to the employer alone but was due to a prior mutual agreement between the parties to be fixed between certain dates. A provision of the contract was made certain and definite to the end that the parties thereto, including the employees for whom the Union acted, might be apprised of their rights and obligations.

The Board of Review in cases of this kind under like circumstances has heretofore unflinchingly, or without waiver, held that appellants were not entitled to benefits, because they were estopped from claiming the benefits under the doctrine of equitable estoppel due to the fact they had held an election and agreed upon taking vaca-

tions as indicated by this contract and thus they were voluntarily unemployed during that time and could not come into court claiming benefits. The Board of Review recognizes the fact that this has been heretofore a unanimous holding of such Boards under facts of this kind, but they were cited to a Texas case in which the matter had been considered and the contrary held, which is the case of *International Union of Electrical, Radio, and Machine Workers, Local Union No. 782, AFL-CIO v. Texas Employment Commission*, as reported in Tex.Civ. App., 346 S.W.2d 649, and on the basis of that case reversed their former holding. This Texas case was subsequently appealed to the Supreme Court of Texas and that court in the case as reported in 352 S.W.2d at 252, 256, reversed the Texas Court of Civil Appeals, and held that the employees were not entitled to compensation. The Texas Supreme Court in considering this question made the following statement which is applicable under the factual situation in the present case when it said:

"It is to be emphasized that the contract is one voluntarily entered into by, and in the interest of, the employees through their Union representative; that the contract, among other things, guarantees payment to the employees for a vacation running concurrently with a plant shutdown, with such payment to be either at the time of the vacation or later during the calendar year; and that all employees are treated alike, compensation-wise, in the overall contractual plan."

The courts generally under the weight of authority, as is annotated in 30 A.L.R. 2d, 366, and particularly at 374, hold that claimants of this kind are unavailable for other employment since a day certain was fixed for their return to work and they could return a day certain and

they were, therefore, not available for other employment for more than one or two weeks and this would not be a sufficient length of time to place them in the labor market.

The Court of Civil Appeals of Texas cited and quoted from the New Jersey case of *Teichler v. Curtiss-Wright Corp.*, 24 N.J. 585, 133 A.2d 320. This case is likewise cited at length in the appellants' brief along with others. There is certainly some beautiful language in the case which would support the appellants to the effect that:

> "It seems to us that a worker who is ready, willing and able to work but is left without work and pay because his employer's plant is temporarily shut down comes fairly within the broad coverage of the Unemployment Compensation Law. The shutdown may be for a relatively short period or it may be for a relatively long period. In either event the worker does not receive the weekly pay check upon which he and his family are generally dependent for their food and shelter. In good times as well as in bad there are unemployed persons who seek work and finally obtain it at plants which they understand may temporarily shut down thereafter. These persons are truly without employment during the payless shutdowns, even though they will resume when the plants reopen."

This case though and the language above quoted is not applicable to the case now before us. In the Teichler case the employee who had appealed there was not entitled to a vacation with pay, but was unable to get work because of the shutdown of the plant by the employer. The New Jersey court had formerly held in *Glover v. Simmons Company*, 31 N.J. Super. 308, 106 A.2d 318, that under a contract situation similar to that herein the em-

ployee was not "involuntarily unemployed." Subsequent to that time the Legislature of New Jersey had modified or changed its Act to meet this holding. It is true that this modification of the Legislature did not control the Teichler case, but the factual situation in the Teichler case is entirely different from the factual situation in the case now before us, and consequently we feel that this is not authority for the proposition here. We think so long as Boards of Review have been holding under a factual situation like the one before us, as they have, that the employee is not entitled to recover then it is up to the Legislature to change the terms or form of the Act to meet such a holding, and not up to the judiciary to reverse this holding which has been accepted and which the employees and employers have been following over the years since the enactment of the Employment Security Law.

Then probably the main reason that the Board of Review reversed its former holding was that the Board said that for the first time Section 50-1349, subd. A had been called to the Board's attention. This statutory provision is:

"No agreement by an individual to waive, release or commute his rights to benefits, or any other rights hereunder, shall be valid. No agreement by any individual in the employ of any person or concern to pay all or any portion of an employer's contributions, required under this chapter from such employer, shall be valid. No employer shall directly or indirectly make or require or accept any deduction from wages to finance the employer's contributions required from him, or require or accept any waiver of any right hereunder by any individual in his employ. Any employer or

officer or agent of any employer who violates any provisions of this subsection shall be guilty of a misdemeanor and punishable accordingly.''

We do not think that this Section of the Code was intended by the Legislature to cover an action wherein the Union representative of the employees and the employer entered into a contract as they have herein. The best answer to this argument was made by a Minnesota court in *Jackson v. Minneapolis-Honeywell Regulator Co.,* 234 Minn. 52, 47 N.W.2d. 449, wherein that court in commenting on a similar situation with a related statutory provision to that above quoted said:

''* * * The agreement is not one to waive rights to benefits which an employee otherwise would be entitled to, but an agreement for a two weeks' vacation leave or voluntary absence from work. An agreement between the employer and its employe providing for a two weeks' leave for the individual employe certainly cannot be interpreted to mean an agreement to waive benefits and therefore prohibited. Such an agreement made collectively by the union should not be placed in a different status. There is an important distinction between an agreement for leave or vacation shutdown which gives rise to no unemployment compensation benefits, and a collusive agreement that unemployment compensation benefits be waived.''

In a similar situation the Supreme Court of Michigan had the identical question here before it. They likewise adopted the statement from the Minnesota court, last above quoted, in answer to this question. The Michigan case to which we refer is *I. M. Dach Underwear Company v. Michigan Employment Security Commission,* 347 Mich.

465, 80 N.W.2d 193, 201. The Supreme Court of Texas in *Texas Emp. Com'n v. International Union of Electrical, Radio & Machine Workers,* supra, likewise adopted the same conclusion and made this additional remark:

"To hold that such an agreement is prohibited would mean that an employee (and the Union for him) is restrained by the Act from contracting for vacations with pay."

The right of a Labor Union to bind its members, for whom it is the sole collective bargaining agency, by a contract of the character here involved was recognized by this Court in *Anderson v. Aluminum Co. of America,* 193 Tenn. 106, 241 S.W.2d 932. Such a right is recognized by the majority of cases over the country. The question is annotated in 135 A.L.R., 900.

After a thorough study of the questions here involved we have concluded for the reasons herein expressed that the Chancellor is correct. Thus it is that his decree is affirmed.