Walter J. Davis, et al.

*v.*

Aluminum Company of America, et al.

(*Knoxville,* September Term, 1958.)

Opinion filed October 3, 1958.

WILLIAMS, HARWELL, HOWSER & THOMAS, Nashville, COOPER, MITCH & BLACK, Birmingham, Ala., for appellants.

HARVEY BROOME, E. H. RAYSON and R. R. KRAMER, KRAMER, DYE, MCNABB & GREENWOOD, Knoxville, of counsel, for appellees.

MR. JUSTICE TOMLINSON, delivered the opinion of the Court.

This is a suit by 498 employees, appellants here, of the Aluminum Company of America for payment of unem-

ployment compensation for which The Tennessee Security Law provides. Section 50-1301 T.C.A., et seq.

As a result of a labor dispute within the meaning of this statute, employees at the Alcoa Plant of this Company went out on strike. This necessitated cessation of operations. An agreement on all matters in dispute was reached in about two weeks and operations, in so far as possible, were immediately resumed.

However, the cessation of operations had unavoidably damaged eleven lines of "electrolytic cells", called pots, in which aluminum is melted. These lines could not be put back into operation until they were repaired. This was done as rapidly as could be expected. Appellants were employees on these lines. So, they were necessarily unemployed pending the completion of such repairs. It is for the period during which these repairs were being made that they claim unemployment compensation.

The contention of the Aluminum Company is that they are disqualified for unemployment benefits by Code Section 50-1324 D reading as follows:

"DISQUALIFICATION FOR BENEFITS.—An individual shall be disqualified for benefits:

\* \* \* \* \* \*

D. For any week with respect to which the commissioner finds that his total or partial *unemployment is due to a labor dispute which is in active progress* at the factory, establishment, or other premises at which he is or was last employed,..." (Emphasis supplied.)

The Tennessee Commissioner of Employment Security approved the claims. They were disallowed by the Board of Review with the statement that:

"We are of the opinion that 'active progress' would include all the time between the period wherein the claimant necessarily left his employment because of a labor dispute and continues through that period of time that it is necessary to ready the plant for operation after an agreement has been reached."

The Chancellor, acting on the petition for *certiorari,* sustained the Board on the ground that:

"There is material and substantial evidence in this record to support the findings of the Board of Review as to the facts and that there is ample basis in law for the conclusions reached by the Board of Review."

The case is here upon the appeal of the employees.

The damage to the pots was due to the labor dispute. The question for decision, therefore, is whether, within the meaning of Code Section 50-1324 D above quoted, after all matters in controversy had been settled the dispute can, nevertheless, reasonably be regarded as continuing in active progress during the repairing of damages physically caused by the dispute. If the answer is yes, as the Board held, then these appellants are disqualified for receipt of the benefits they are claiming.

Appellees' contention is that the Board's conclusion must not be disturbed if it has "warrant in the record" and a "reasonable basis in the law", and that the Board's conclusion has these qualifications. In support of its insistence it cites and quotes from *"Unemployment Compensation Commission of Territory of Alaska v. Aragon,* 329 U.S. 143, 67 S. Ct. 245, 91 L. Ed. 136".

The statute disqualifying the workmen from benefits in the Aragon case did, as in the case at bar, provide for

disqualification when the unemployment "is due to a labor dispute which is in active progress". The business carried on in that case was seasonal. In consequence of failure of bargaining negotiations to settle the dispute prior to the beginning of the season it was decided by the employers not to conduct this business that season. Nevertheless, negotiations continued for a period of time after such decision seems to have been made. It was in that period that the employees were held disqualified on the theory that it was a labor dispute in active progress. Or, to express the holding in the Aragon case in the language of the text of 81 C. J. S. Social Security and Public Welfare, sec. 194, page 289, in its analysis of the holding in that case:

"If negotiations between the employer and employee continue, a dispute may be found to be in active progress, even though a point is reached where all possibility of settlement of the dispute has disappeared."

So, the case at bar differs in substance from the Aragon case in that in the case at bar compensation is sought for a period after all negotiations had ceased and all matters in dispute had been settled. In the Aragon case, to the contrary, the matters in dispute had not been settled and the dispute did continue during the period for which compensation was claimed.

■ As affirmatively declared by Code Section 50-1302, the Employment Security Law was enacted for the purpose of alleviating economic insecurity to the individual and his family due to unemployment. Therefore, as observed in the Alabama case of *Gulf Atlantic Warehouse Company v. Bennett,* 36 Ala.App. 33, 51 So.2d 544, 546,

"disqualification from the benefits of the statute are exceptions and should be narrowly construed".

As this Court views the matter, it would be a violation of this uniformly applied rule immediately above stated to hold that there is in active progress a labor dispute, when as a matter of fact, all matters in dispute had been settled and negotiations, therefore, terminated. The repair of the pots was not an item of dispute. It was concededly the duty of the employer to make those repairs, and it was diligently performing that duty in a manner and time satisfactory to employees. To borrow the language of the Pennslyvania case of *MacFarland v. Unemployment Compensation Board of Review*, 158 Pa. Super. 418, 45 A. 2d 423, 425:

> "We cannot approve an administrative construction which denies compensation to an employed worker unless the plain language of the statute clearly excludes him from its benefits."

This Code Section 50-1302 also declares that the Employment Security Law is intended "for the benefit of persons *unemployed through no fault of their own.*" (Emphasis supplied) Appellee calls attention to the expression "through no fault of their own". It then states the fact that it was fully understood by the bargaining agents and those claimants that the cessation of operation resulting from the strike would cause this damage to these pots and thereby result in the unemployment of these claimants after the termination of the strike until the pots could be repaired. Predicated upon this fact, it is insisted by appellees that such "unemployment is not the unemployment of persons 'unemployed through no fault of their own' ", within the intent of the statute.

█ If the Court should approve the insistence just stated it would amount by necessary implication to a finding by this Court that the labor dispute was caused by the fault of the employees. Counsel probably overlooked this fact. At any rate, the decisions, without exception, in so far as we have been able to find, are that in the determination of whether employees are entitled to the unemployment benefits provided by the Employment Security Law, it, the Court, never goes into the question of whether the labor dispute was the fault of the employer or the employees and their bargaining agent.

In rejecting that insistence the Michigan Court in *Lawrence Baking Company v. Michigan Unemployment Compensation Commission*, 308 Mich. 198, 13 N.W.2d 260, 154 A.L.R., 660, 666, said this:

"Plaintiff's argument is based upon the assumptions that the claimants were wrongfully on strike; were not justified in striking; that the strike was their own fault; and that they were unemployed because of their own fault. As stated in said section 2, the basic purpose of the unemployment compensation law is to afford protection against the hazard of unemployment. The payment of unemployment benefits is not dependent upon the merits of a labor controversy. . . ."

It was noted in *Ablondi v. Board of Review*, 8 N.J. Super. 71, 73 A.2d 262, 264, in discussing the function of the Court in construing the Unemployment Compensation Law, that:

"It has been said to place the State in a completely neutral position without regard to the rightness or rea-

sonableness of the positions or demands of the employer or the employees''.

In determining the meaning of a statute it is permissible for the Court to consider its background, the historical facts preceding, or connected with, the enactment thereof.

Generally stated, the Employment Security Law was ''a sort of uniform statute'' ''enacted in most of the states''. *Queener v. Magnet Mills, Inc.*, 179 Tenn. 416, 426, 167 S.W.2d 1, 5. According to Volume 49, page 461 of the Yale Law Journal at the time of its publication forty-one of fifty-one of our states and territories had written into their respective Social Security Laws a provision that the employees should be disqualified for benefits for any week with respect to which his *''unemployment is due to a stoppage of work which exist because of a labor dispute.''* (Emphasis supplied.)

But when Tennessee enacted its Employment Security Law it did not provide therein, as had the great majority of States, a disqualification by reason of unemployment due to a stoppage of work resulting from a labor dispute. Instead, it limited the disqualification to unemployment existing while the labor dispute ''is in active progress''. Should it not be concluded that Tennessee's Legislature used different language as to such disqualification because its intent was different; that is, that it did not intend for unemployment due to stoppage of work to be construed as a continuation of the labor dispute, if all matters in controversy had, in fact, been settled?

The Indiana Court in *Carnegie—Illinois Steel Corp. v. The Review Board, Etc.*, 117 Ind.App. 379, 72 N.E. 2d 662,

665, 667, so concluded, and expressed that conclusion thus:

"There are two types of statutes in the states and territories of this country dealing with disqualification for unemployment benefits. The one type such as the Wisconsin statute, Sec. 108.04 (5) (a) of Chap. 108, Wis. Stats., which provides for disqualification for benefits, 'for any week in which such strike or other bona fide labor dispute is in active progress in the establishment in which he is or was employed', is in effect in a number of states. The other type is the one as is in effect in this state, and does not contain the words or requirement that a strike be in active progress in order to disqualify a worker for benefits. Considering the legislative history of such enactments it is not unreasonable to assume that if the legislature of this state had intended to require that a strike be in active progress in order to disqualify a worker for benefits that it would have enacted the active progress type of statute. Similarly, we feel it is not unreasonable to assume that had the legislature intended that the stoppage of work and the labor dispute had to be coexistent, it would have made its intent clear through some language such as the insertion of the word 'existing' following the words 'labor dispute' in the section in question."

\* \* \* \* \* \*

"It is reasonable to assume that if the Legislature had intended the stoppage of work and labor dispute had to exist at the same time, it would have so stated in the Act."

 If the language in question here be given its generally accepted meaning, then it seems to this Court that

when the Tennessee Legislature provided for disqualification for unemployment benefits when such unemployment is due to a labor dispute which is in active progress it meant that the stoppage of work and labor dispute had to exist the same time. That is what it said. To otherwise construe it is to judicially amend the Act by striking therefrom the words "which is in active progress".

With reference to difference in effect by reason of the variance in language of this statute in different States, the Illinois Court in *American Steel Foundries v. Gordon*, 404 Ill. 174, 88 N.E.2d 465, 469, said this:

"Recourse to Section 7 (d) discloses that, although the statute specifically prescribes that an individual shall be ineligible for benefits for any week with respect to which is found that his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute at his place of employment, the statute does not also require that the labor dispute which caused the stoppage still exist or be in active progress. In other words, neither the 'stoppage or work' nor the the resultant ineligibility is limited in its duration by the duration of the 'labor dispute', so long as the 'stoppage of work' continues, as the statute says, 'because of a labor dispute.' Section 7 (d) is sufficiently clear, and it is only when a tortuous construction is sought to be applied to the plain words clearly stated that ambiguity results and construction is required."

This difference in effect by the different wording of the statutes was noted in the Arizona case of *Sakrison v. Pierce*, Ariz., 185 P.2d 528, 173 A.L.R., 480, 486. The Court first called attention to the fact that in the Unemployment Compensation Statute of Alabama, California,

and Ohio, the disqualification exists when the unemployment is ''due to a labor dispute still in active progress in the establishment'', (Ala.) or ''if he left his work because of a trade dispute, and for the period during which he continues out of work by reason of the fact that the trade dispute is still in active progress'' (Calif.) or ''lost his employment or has left his employment by reason of a labor dispute—as long as such labor dispute continues'', (Ohio)

> ''in each of these, the disqualification is made to depend not upon the cessation of operations at the employer's establishment as is true in Arizona, but instead upon 'labor dispute . . . in active progress'; 'trade dispute . . . in active progress'; 'labor dispute continues.' There is no added requirement, such as in our statute, to the effect that the dispute must be of such an intense nature that it results in the virtual closing down of the place of business before compensation is denied to those unemployed as a result thereof.''

Applicable also is *American Steel & Wire Company v. Unemployment Compensation Board of Review*, 161 Pa. Super. 622, 56 A. 2d 288. It is annotated in 28 A.L.R. 2d 323, as follows:

> ''Under the former Pennsylvania unemployment compensation law providing that an employee should be ineligible for compensation for any week in which his unemployment was due to a voluntary suspension of work resulting from an industrial dispute, the words 'voluntary suspension' did not mean 'work stoppage', and consequently the employee was disqualified only for the duration of the strike and not for any addi-

tional time of unemployment required for repair or preparation for resumption of operations."

*Lawrence Baking Company v. Unemployment Compensation Commission,* reported in 308 Mich. 198, 13 N.W.2d 260, 154 A.L.R. 600, 664-665, and heretofore referred to, recognize it as a fact that there is a difference in disqualification between a statute making the disqualification dependent upon a labor dispute in active progress and one making a disqualification for unemployment due to a stoppage of work caused by the dispute or strike.

See also the text of 81 C.J.S. Social Security and Public Welfare, sec. 194, page 288-289, where the same distinction by clear implication is stated.

With the exception of the Aragon case referred to in the Board's finding, and hereinbefore discussed, this Court, after as thorough a search as it can make, has not found a single decision or text which supports the conclusion of the Board of Review. They all hold directly or by necessary implication to the contrary of such conclusion. The Aragon case is to be confined to its particular facts and, as stated, is to be distinguished from the case at bar on the ground.stated in the heretofore quoted text of 81 C.J.S. Social Security and Public Welfare, sec. 194, page 289.

In this Court's opinion, both principal and persuasive precedent force a rejection of the Board's conclusion that within the meaning of Code Section 50-1324 D a labor dispute in active progress includes the period of time necessary to ready the plant for operation after an agreement has been reached as to all matters which were in controversy in the labor dispute. In this Court's

opinion, this conclusion of the Board has neither "warrant in the record" nor "a reasonable basis in the law".

■■ And this Court's opinion is that an employee is not disqualified within the meaning of Code Section 50-1324 D from receipt of unemployment benefits of the Tennessee Employment Security Law by reason of unemployment following settlement of all matters in controversy in the labor dispute for the period thereafter required for repair of damages done the plant by the dispute.

The decree of the Chancellor will be reversed. *Certiorari* will be granted. The finding and conclusion of the Board of Review will be set aside and the claimants decreed to be entitled to unemployment compensation for the period of making the repairs to the pots, and the cause remanded for such further proceedings as are required in accordance herewith. All costs will be adjudged against the appellee.

MR. CHIEF JUSTICE NEIL did not participate in the consideration of this case.