353 S.W.2d 561 (1961)
SPECIAL PRODUCTS COMPANY OF TENNESSEE, Inc.,
v.
L.B. JENNINGS, Commissioner of The Department of Employment Security, et al.
Supreme Court of Tennessee.
December 8, 1961.
Rehearing Denied February 8, 1962.
Farris, Evans & Evans, Nashville, for appellant.
W. L. Moore, Chief Counsel, W.D. Dodson, Asst. Chief Counsel, Nashville, for appellee.
PREWITT, Chief Justice.
Sixty-two former employees of Special Products Company filed their claim for full employment insurance benefits with the Commissioner of Tennessee Department of Employment Security; their claims were allowed, approved by the Commissioner and also by the Board of Review, thereupon the Company filed its bill for certiorari in the Chancery Court of Hamilton County, and the result of the trial was that the Chancellor upheld the findings of the Commissioner and the Board of Review.
These aforementioned employees went out on strike on January 4, 1960, and the plant continued to operate with some employees, who did not join in the walk out, and others who were from time to time employed. The picket line was maintained by the striking employees, and they knew their jobs were being filled with replacements.
On July 12, 1960, they decided the strike was a lost cause, notified the employer that the strike had ended and applied for re-employment, which is a prerequisite of obtaining unemployment benefits. No benefits are available to employees while a labor dispute is in active progress. The jobs of these sixty-two employees having *562 been filled, the employer had no work available for them on July 12, 1960.
The employer, in filling out the separation notices, stated that these employees were on strike from January 4, 1960, to July 12, 1960, and their jobs had been filled by others. The defendants then applied for unemployment benefits. Their claims were approved by the Commissioner and his finding confirmed by the Board of Review.
Special Products Company filed a protest against payment of benefits to claimants, seeking to have the claims partially disallowed on the ground of misconduct other than gross misconduct and to obtain a non-charge against its experience rating.
The Board of Review found that at the time the claims were filed, July 14, 1960, "the parties offered unconditionally to return to their jobs," and as of that time there was no labor dispute in active progress at the factory.
Section 50-1324, subd. A(1) T.C.A. provides as follows:
"If the commissioner finds that he or she has left his or her most recent work voluntarily without good cause connected with his or her work, such disqualification shall be for the week in which he or she files a claim for benefits subsequent to such separation from work, and for the four (4) weeks immediately following thereafter (in addition to the waiting period), and such individual shall have deducted from his or her maximum total benefit amount in his or her benefit year an amount equal to five (5) times his or her weekly benefit amount. * * *"
The finding under this Section of misconduct, or attempting to do so would require an adjudication of the merits of the labor dispute, and we are without jurisdiction to pass upon this question.
This cause involves the question of whether some sixty-two former employees of the appellant are entitled to unemployment compensation benefits after their having ended a strike by seeking to return to their former jobs but which jobs had, during the period of the strike, been filled by their former employer, the appellant, and consequently at the time they ended such strike no jobs were available for them.
Where striking employees refuse to return to work and take the risk that their jobs are going to be lawfully filled by new workers if they do not return, and they lose their jobs as a result thereof, are they (a) entitled to employment benefits immediately following their termination of the strike, with the employer's experience rating penalized thereby, or (b) disqualified for benefits for a limited period after their announcement of the strike termination, because they have either (1) voluntarily and without good cause left their employment under T.C.A. § 50-1324, subd. A(1), or (2) been discharged for misconduct, other than gross, under T.C.A. § 50-1324, subd. B(2), with the employer not penalized by a charge against its experience rating?
The Commissioner relies upon the case of Davis v. Aluminum Company of America, 204 Tenn. 135, 316 S.W.2d 24, to suport the findings of the Board of Review.
In the Aluminum Company case it was pointed out that there were two types of statutes concerning disqualifications due to labor disputes. Some statutes provide disqualification for unemployment benefits "for any week in which such strike or other bona fide labor dispute is in active progress."
The other, which is in effect in Tennessee, refers to the labor dispute in active progress. Under both types, the benefits are lost during the strike or active labor dispute.
In the Aluminum Company case the shut down unavoidably damaged electrical cells called "pots" in which the aluminum *563 is melted. The claim for benefits covered the period after the strike ended and the time that it took to repair these pots, so that the plant could be readied for the resumption of operations.
The Aluminum Company case is the authority for holding that, when the strike terminates and the employees unconditionally agree to return to work, there is no longer an active labor dispute, and eligibility for benefits under the Unemployment Security Act commences.
We think Davis v. Aluminum Company of America, supra, is authority for the proposition that persons whose unemployment is originally caused by a labor dispute, and are thereby subject to the disqualification provision of the Tennessee Employment Security Law dealing with labor disputes, nevertheless are entitled to employment compensation benefits as soon as the labor dispute has been terminated.
We find here that the employer considered the strike ended and that thereafter the unemployment of these individuals was not due to the strike, but because there were no jobs available to them at the time the strike was ended since the jobs had previously been filled. In this connection see Abbott Publishing Company v. Annunzio, 414 Ill. 559, 112 N.E.2d 101; Great A. & P. Tea Company v. New Jersey Department of Labor, 29 N.J.Super. 26, 101 A.2d 573, and Texas Employment Commission v. Hodson, Tex. Civ.App., 346 S.W.2d 665.
It should be borne in mind that the Legislature intended that the disqualification put into the Employment Security Law, when they enacted Code Section 50-1324, subd. D, T.C.A. was to take care of all of the situations when the separation of the employees are originally due to a labor dispute.
To hold that the claimants, who originally went out on strike should, after the end of the strike, and after being, during the period of the strike, disqualified by this statutory provision from receiving unemployment benefits, be further disqualified for either voluntary quitting or for misconduct, would, in our opinion, be to hold that the claimants were wrongfully on strike originally; were not justified in striking; that the strike was their own fault; and that they were unemployed because of their own fault.
We said in Davis v. Aluminum Company of America, supra:
"If the Court should approve the insistence just stated it would amount by necessary implication to a finding by this Court that the labor dispute was caused by the fault of employees. Counsel probably overlooked this fact. At any rate, the decisions, without exception, insofar as we have been able to find, are that in the determination of whether employees are entitled to the unemployment benefits provided by the Employment Security Law, it, the Court, never goes into the question of whether the labor dispute was the fault of the employer or the employees and their bargaining agent."
The provisions of the Employment Security Law dealing with the disqualification for labor disputes, and with the disqualification for misconduct and the disqualification for voluntary quitting are all grouped under one Section, namely: T.C.A. § 50-1324, which sets out all of the conditions under which a claimant for unemployment compensation may be disqualified from such benefits.
In the case of Little Rock Furniture Company v. Commissioner, 227 Ark. 288, 298 S.W.2d 56, the Supreme Court of Arkansas held that claimants, who were originally separated from their jobs because of a strike could not later following the cessation of the strike, be disqualified either for voluntary quitting or because they committed some act of misconduct.
We, therefore, are of the opinion that the labor dispute disqualification *564 ceased to apply when the claimants notified their employer that the strike had been abandoned; and that they had decided to return to their jobs and that there was a bona fide labor dispute.
All assignments of error are overruled and the decree of the Chancellor is affirmed.
BURNETT, FELTS, WHITE, and DYER, JJ., concur.