Abraham W. JOHNSON et al., Appellants,

v.

KENTUCKY UNEMPLOYMENT INSURANCE COMMISSION et al., Appellees.

Court of Appeals of Kentucky.

April 19, 1963.

Robert O. Lukowsky, Ware & Lukowsky, Covington, for appellants.

Paul E. Tierney, Frankfort, Frank V. Benton, Jr., Benton, Benton, Luedeke & Rhoads, Newport, for appellees.

PALMORE, Judge.

The appellants, members of the United Steelworkers of America, were employees of the Acme Newport Steel Company and went on strike at the time of the nationwide steel strike on July 15, 1959. The strike was precipitated by the inability of the union and steel industry to negotiate a new collective bargaining agreement on or before expiration date of the old one. On November 7, 1959, the strike was brought to a halt pursuant to a Taft-Hartley injunction granted by the U. S. District Court for the Western District of Pennsylvania. United States v. United Steelworkers of America, D.C., 178 F.Supp. 297, 44 L.R.R.M. 3016, aff'd 271 F.2d 676 (3d Cir.), aff'd 361 U.S. 39, and 44, 80 S.Ct. 1 and 177, 4 L.Ed.2d 12 and 169. The appellants were called back to work at various times between November 15 and 22, 1959, and several months thereafter, while the injunction was still in effect, a new collective bargaining agreement was reached and the operation of Acme Newport's plant continued without interruption. Meanwhile, the appellants had applied to the Kentucky Unemployment Insurance Commission either to serve the one-week waiting period or be paid unemployment compensation for the respective periods of their individual unemployment between November 8 and November 22, 1959. See KRS 341.350.

The Commission denied the claims, and its action was affirmed on a judicial review by the Franklin Circuit Court under KRS 341.460. This appeal followed.

Most of the states and territories adopted unemployment insurance statutes contain-

ing a disqualification for benefits if the unemployment "is due to a stoppage of work which exists because of a labor dispute." Unemployment Compensation in Labor Disputes, by Herbert A. Fierst and Marjorie Spector, 49 Yale L.J. 461. Under these statutes "it is generally held that the claimant remains ineligible for benefits during the entire period of his unemployment even though a period of time is required after the settlement of the dispute for the employer to resume normal operations." Annotation, Construction and application of provisions of unemployment compensation or social security acts regarding disqualification for benefits because of labor disputes or strikes, 28 A.L.R.2d 287, 322. Our statute, however, does not disqualify the claimant unless the "strike or other bona fide labor dispute which caused him to leave or lose his employment is in active progress." KRS 341.360(1). Hence if the labor dispute that precipitated the strike on July 15, 1959, ceased to be "in active progress" upon the granting of the Taft-Hartley injunction of November 7, 1959, the appellants were eligible under KRS 341.350 even though their unemployment during the interim between cessation of the strike and resumption of normal operations was caused by the strike. See, for example, Davis v. Aluminum Company of America, 1958, 204 Tenn. 135, 316 S.W.2d 24, in which it was held, under statutory language comparable with ours, that employes whose recall following settlement of a strike was delayed pending completion of repairs to equipment damaged by the cessation of work were eligible for benefits, because the dispute, having been settled, was no longer "in active progress."

█ It is clear from the opinions in Ward v. Barnes, Ky.1954, 266 S.W.2d 338, and Barnes v. Hall, 1940, 285 Ky. 160, 146 S.W. 2d 929, 935, that this court has accepted the definition of "labor dispute" set forth in the Norris-La Guardia Act, 29 U.S.C.A. § 113(c), enacted in 1932, and in the Wagner Act (National Labor Relations Act), 29 U.S.C.A. § 152(9), enacted in 1935, with specific reference to KRS 341.360(1), the statutory section involved in this case. As the definition is quoted in both opinions we shall not again copy it here.

The breadth of the definition in the Norris-La Guardia and Wagner Acts was implementary of their fundamental purpose to protect the right of collective bargaining. It was meant as an umbrella. On the other hand, it is argued, the disqualification provision of our unemployment compensation law (KRS 341.360) has a different purpose and calls for a restrictive rather than a broad definition of the term, in keeping with the spirit of unemployment compensation as distinguished from the objectives of the federal legislation relating to labor disputes. Appellants contend that the words "active progress" connote something more than a mere continuance of the disagreement following resumption of work. They say, in substance, that here were men ready, willing and able to work but who were out of work, and that the purpose of our unemployment compensation law is to provide benefits under those circumstances. It is a persuasive argument.

Both the Commission and the Franklin Circuit Court found Ward v. Barnes, Ky. 1954, 266 S.W.2d 338, to be dispositive of this case, and we do not see how the analogy can logically be avoided. In that case a dispute arose over the employer's practice of staggering the work of its tipple employes over 3 shifts. The union called the employes off the job, and a week later work resumed pursuant to a mutual understanding that the tipple would be operated in 2 consecutive shifts. This system resulted in a bottleneck, and the employer found it necessary to lay off some of its mine workers. Thereafter the union withdrew its objection to the 3-shift arrangement, whereupon the controversy was finally terminated. Upholding the Commission and the circuit court in denying unemployment compensation claims of the laid-off miners for the interim period, this court held that the understanding between the union and the employer under which work was resumed with a 2-shift tipple operation was a mere truce

or armistice, and not a cessation of the labor dispute.

It seems to us that the basis for disqualification is stronger in this case than it was in Ward v. Barnes. If a dispute is considered to be still in active progress during a voluntary truce, surely it must be so during an involuntary one.

From the manner in which the terminology of KRS 341.360(1) departs from the standard provision heretofore mentioned as having been generally adopted elsewhere it seems clear that our legislature did not intend the continuing consequences of a labor dispute to affect eligibility for unemployment compensation beyond the moment of its settlement. This was a more liberal provision than most of the other states saw fit to make. Whether the legislature envisaged the further possibility of a temporary suspension or settlement, or what its intention might have been in that respect, we are frank to say we do not know and cannot guess. If, however, "strike" and "labor dispute" were to be regarded as practically synonymous, why did the legislature choose to use both terms?

■ After its judgment granting the injunction had been affirmed by the United States Supreme Court, the U. S. District Court for the Western District of Pennsylvania entered an ancillary judgment, United States v. United Steelworkers, 39 CCH Labor Cases par. 66, 172, 45 L.R.R.M. 2515, construing the original judgment. Among other provisions, the ancillary judgment recited that (1) while the injunction did not settle the dispute as to the terms and conditions of employment which should apply after the period of the injunction, there was and could be no dispute "with respect to the employment status" of the union members for the period of the injunction, and (2) no union member "could have been unemployed after November 7, 1959, due to the continuation after that date of the dispute between that union" and the employers, "although some members * * * were unemployed after November 7, 1959

due to delays necessarily incident to the resumption of operations subsequent to the termination of the strike pursuant to this Court's injunction."

It may be conceded that these provisions of the ancillary judgment were aimed at the unemployment compensation status of the affected union members. The litigation did not, however, embrace any justiciable issue with respect to unemployment compensation, nor were the necessary parties to such an issue before the court. Whatever the court may have thought or desired its judgment to mean in other courts, its effect under the unemployment compensation statutes of the several states was for their courts to determine. In brief, the District Court's construction with respect to anticipated side effects of its injunction is entitled to weight and respect but is not binding in this proceeding.

Even if we should accept the expository recitations of the ancillary judgment at face value, it is not at all clear that they help to solve this case. The absence of a dispute concerning present status during the injunctive period is not inconsistent with the active progress of an antecedent dispute which certainly involved the status that would exist thereafter. The declaration that no union member could have been unemployed after November 7, 1959, "due to the continuation after that date of the dispute" is likewise equivocal insofar as might bear upon our particular statute, because the disqualifying language of KRS 341.360(1) does not require that the unemployment be "due to" a continuation of the dispute. It simply calls for two concurring circumstances, (a) that the labor dispute caused the loss of employment in the first place, and (b) that the same dispute is still in active progress.

■ In the last analysis, it is unnecessary in this particular case to rely on the definition of "labor dispute" heretofore adopted from the Norris-La Guardia and Wagner Acts. There is no doubt that a labor dispute was in active progress until the injunction was granted. Giving to the terminol-

ogy of KRS 341.360(1) the meaning we think would be commonly accepted by lawyer and layman alike, it is our conclusion that when all that kept the dispute from taking the form of a strike was the existence of a temporary injunction it was still a "labor dispute" and was "in active progress."

The judgment is affirmed.