Zimmerman, J.
The Ohio Unemployment Compensation Act was first enacted in 1936 and has undergone various amendments since that time. The fund out of which unemployment compensation is paid to employees is represented entirely by compulsory contributions on the part of employers and is in effect a tax on the privilege of doing business in Ohio. The purpose of the act and the fund is to enable unfortunate employees, who become and remain involuntarily unemployed by adverse business and industrial conditions, to subsist on a reasonably decent level and is in keeping with the humanitarian and enlightened concepts of this modern day.
In essence, appellants take the position that during the period of time after the injunction, when they were awaiting a summons to return to work, they were unemployed due to lack of work; that this was attributable to their employer’s failure to recall them; and that during such period there was no labor dispute and no continuation of a labor dispute within the meaning of applicable Section 4141.29 (D) (1) (a), Revised Code, properly interpreted.
On the other hand, appellees contend that a labor dispute was responsible for appellants’ unemployment prior to the effective date of the injunction, viz., November 7, 1959; that despite the injunction summarily terminating the strike the labor dispute continued; that the injunction did not affect such continuing dispute; that such dispute involved the terms and conditions of a new contract between the labor union and the employer; and that the labor dispute actually continued until January 4, 1960, when a new agreement was reached.
As generally understood, a “strike” is a cessation of work by employees in an effort to obtain more desirable terms with *224 respect to wages, working conditions, etc., whereas a “labor dispute” is of broader scope and includes a controversy between employer and employees concerning wages, working conditions or terms of employment.
In support of their contentions, appellees rely on an open letter written by Arthur J. G-oldberg, then general counsel for the United Steelworkers of America and now a justice of the Supreme Court of the United States, admitted in evidence over objection as an exhibit and which reads in part:
“The strike had been interrupted, but our dispute continued. Negotiations took place during the 80 days. * * *
“On January 4, 1960, just one week before a vote was to be taken on the companies’ last offer, and three weeks before the injunction was to be dissolved, we concluded a strike settlement with the steel industry. The agreement is a good one, fully justifying the sacrifice we made to obtain it. Thus, although we were to be free to strike again on January 26, there is no longer any need to do so. Indeed, the knowledge that we were not only at liberty to strike again, but actually intended to, was a potent factor in inducing the employers to come to terms with us.”
The statute applicable to these cases plainly provided that an employee was not entitled to unemployment compensation during any week when his unemployment was due to a labor dispute. Here, there was a labor dispute culminating in a strike which forced the employer to close its plants. Once these plants were closed, they could not be restored to full operation immediately upon the termination of the strike. The reactivation of the plants was necessarily a gradual process, and the employer was not required to recall an employee to work until such employee’s department was readied and his services needed. It was the strike which caused the plants to cease operations in the beginning, and the time required to reactivate them as a result of the shutdown was attributable to a labor dispute which continued until the agreement of January 4, 1960. Consequently, appellants’ unemployment began and continued by reason of a labor dispute, even though the strike itself had come to an end.
This opinion could be carried to a greater length, but we *225 feel it unnecessary to do so. It is our conclusion that the Board of Review, upon the evidence presented to it, was warranted in finding that a labor dispute existed within the plain language of Section 4141.29 (D) (1) (a), Revised Code, during the time for which appellants claimed unemployment compensation, and that appellants were unemployed over the period in controversy by reason of such dispute and were not entitled to the payment of unemployment compensation. We are further of the opinion that the lower courts correctly determined that the action of the Board of Review was neither unlawful, unreasonable nor against the manifest weight of the evidence.
There are a number of cases which could be cited buttressing our conclusion. Probably the one nearest in point with respect to the similarity of statutory terminology is that of Johnson v. Kentucky Unemployment Insurance Commission (Ky.), 367 S. W. (2d), 253.
As bearing on the subject, see, also, American Steel Foundries v. Gordon, 404 Ill., 174, 88 N. E. (2d), 465; Carnegie-Illinois Steel Corp. v. Review Board of Indiana Unemployment Compensation, 117 Ind. App., 379, 72 N. E. (2d), 662; Saunders v. Maryland Unemployment Compensation Board, 188 Md., 677, 53 A. (2d), 579; Legacy v. Clarostat Mfg. Co., 99 N. H., 483, 115 A. (2d), 424; Polinchak Unemployment Compensation Case, 175 Pa. Sup., 181, 103 A. (2d), 273; and Fort Pitt Mfg. Co. v. Unemployment Compensation Board of Review, 176 Pa. Sup., 162, 106 A. (2d), 672.
Compare Davis v. Aluminum Company of America, 204 Tenn., 135, 316 S. W. (2d), 24, where, under a statute limiting disqualification of a claimant for benefits to a “labor dispute which is in active progress,” unemployment compensation was allowed when the manufacturing plant was being prepared for resumption of work after an agreement had been reached.
The judgments of the Courts of Appeals for Stark and Mahoning Counties are affirmed.

Judgments affirmed.

Taut, C. J., Matthias, 0’Neill, Grieeith and Herbert, JJ., concur.