Ford Motor Company

*v.*

Mrs. Leo Burson et al.

470 S.W.2d 941

(*Nashville,* December Term, 1970.)

Opinion filed September 7, 1971.

WILLIAM MOORE, General Counsel, Department of Employment Security, GEORGE E. BARRETT, of BARRETT & MITCHELL, Nashville, for appellants.

WILSON SIMS and OTTO B. GERLACH, III, BASS, BERRY & SIMS, Nashville, for appellee.

488

Mr. Justice McCanless delivered the opinion of the Court.

The Commissioner of Employment Security of Tennessee and one hundred eighty-two employees of Ford Motor Company at its Nashville glass plant have appealed from a decree of the Chancery Court which reversed and disallowed an award of unemployment benefits by the Board of Review of the Department of Employment Security.

On September 7, 1967, their labor contracts having expired, the employees of all Ford Motor Company plants in the United States, numbering one hundred or more, went on strike. Their representative and bargaining agent nationally and locally was the United Automobile Workers.

Negotiations for new contracts, which had been in progress since July, continued on both the national and local levels and on October 22nd the company and the union reached an agreement, subject to local ratification, on a master contract. In the meantime the company and the local had agreed on the local issues at the glass plant. On October 25th the members of the local ratified both the national and the local contracts, and the officers of the local withdrew the pickets and notified the company that their members were "ready, able, and willing" to

resume their employment. Limited production commenced but the plant did not resume full operation until November 11th.

The employees, who are appellants, seek benefits for the period from October 25th to November 11th, contending that their unemployment during that time was involuntary and was under circumstances which entitled them to benefits. The company, on the other hand, contends that such unemployment resulted from a labor dispute in active progress and the employees are disqualified to receive benefits under the terms of Section 50-1324, subd. D., T.C.A., which provides that an employee shall be disqualified: "for any week with respect to which the commissioner finds that his total or partial unemployment is due to a labor dispute which is in active progress * * *."

The Board of Review found that the labor dispute had ceased to exist when all national and local issues were settled between the glass plant and its employees and that after that date the appellants' unemployment was not due to the existence of a labor dispute in active progress.

Ford Motor Company sought a review of the Board's action by certiorari in the Chancery Court. The Chancellor, reversing the Board, in his memorandum opinion said:

"What was the cause of complainants' unemployment? The unemployment in the case of *Davis v. Aluminum Company of America,* 204 Tenn. 135 [316 S.W.2d 24], cited by both parties, was due to the time required to repair damages done to the plant as a

result of the labor dispute, after all negotiations had ceased and all matters in dispute had been settled. The unemployment in the case of *Special Products Company v. Jennings,* 209 Tenn. 316 [353 S.W.2d 561], was due to the fact that there were no jobs available at the time the strike ended, since jobs had been previously filled. The unemployment of complainants in the case at bar must be viewed in the light of the complex and highly integrated operations of Ford, the structure of the bargaining procedure and the settlement agreement. It is thus clear that the unemployment of the complainants at the Ford Glass Plant in Nashville resulted from active labor disputes in other locals.

"The Court holds that those unemployed at the Nashville Plant before November 11, 1967, were unemployed because of the continued existence of a labor dispute in active progress, which dispute terminated on November 11, 1967, by the terms of the settlement agreement."

The appellants have assigned error by which they have challenged the Chancellor's decree on two grounds: (1) that he erred in making a factual determination different from the facts as determined by the Board of Review, and (2) in allowing a waiver by the union in its master contract of the appellants' unemployment compensation benefits.

There is no disputed fact in this record though the Chancellor reached a different legal conclusion from his consideration of the facts than the Board had reached from their consideration of them. As this Court said in *Aladdin Industries v. Scott,* 219 Tenn. 71, 407 S.W.2d 161 (1965):

"The appellant here contends that the chancellor erred in his holding that the question of whether work offered the employee was suitable was a factual issue and not a legal issue. As stated before, it is our opinion from reading this record that the issue was legal rather than factual. There was no disagreement or dispute about the facts."

That the conclusions of the Chancellor differed from those of the Board indicate only that he reached different legal conclusions and not that he found the facts to be different. The facts, undisputed, were the same.

■ The employees of Ford Motor Company are bound by the terms of the contracts that their union entered into with the company and which they ratified. *Bridges v. Cavalier Corp.*, 212 Tenn. 237, 369 S.W.2d 548. One of the stipulations of the master contract, by which they are bound and of which they are beneficiaries, appears in Section 5:

"The term 'the Effective Date' as used in the Collective Bargaining Agreement and any other agreement, letter or other document supplementary or related thereto or associated therewith, shall be deemed to mean the date upon which the strike is terminated at all locations whenever such term is used in conjunction with the establishment of an effective date for a change stated in terms of 'ninety days after the Effective Date'.

"The Company will waive the provision of the new Collective Bargaining Agreement prohibiting or limiting the right to strike with respect to each plant where the strike continues for the duration of the continuance of the strike at such plant, with the understanding that

time lost by employees at other plants in the Contract unit as a result of such waiver is acknowledged by the parties to be time lost in the strike."

The company argues that that language defines the labor dispute as being in active progress in all the plants until all local agreements should be reached in every other plant. The employees insist that since their pickets had been withdrawn and they had become available for work and had so notified the company on October 25th, the labor dispute had not been in active progress after that date and that the stipulation contained in Section 5 violates this provision of Section 50-1349, subd. A:

"No agreement by an individual to waive, release or commute his rights to benefits, or any other rights hereunder, shall be valid."

The Court dealt with this language in *Bridges v. Cavalier Corp.,* supra. There the labor contract stipulated that during vacations the wages of the employees should be paid at a lesser rate than when they should be at work. The Court disallowed the insistence that this provision stipulated a period of unemployment without benefits and was in violation of Section 50-1349, subd. A, T.C.A.

The record establishes the fact that Ford Motor Company is a large and elaborate manufacturing complex composed of many plants which are dependent one on another for parts and materials on one hand and as users or consumers thereof on the other.

The chairman of Ford Motor Company's national bargaining committee explained the purpose of Section 5 of the master contract thus:

"We had agreed on the economic issues at the National Bargaining level and to that extent we had completed work on our negotiations. However, from the beginning of the negotiations we had been anxious to insure that we did not have a situation as we did in 1964 where the National contract was settled but the strikes continued at several local plants. Therefore, we tied the National settlement to the settlement of all of the local issues. What we agreed to at the National level was not effective until all of the local plants ratified the National contract and settled their local issues. None of the economic benefits which were gained by the Union in the National settlement would be paid to any employee anywhere in the country until all plants had ratified the National agreement and settled all of their local issues. For example, the Ford Glass plant in Nashville settled their local issues and ratified the National Agreement in the same meeting on October 25th, but they did not draw any of the benefits from the National settlement until every other Ford plant had settled their issues and ratified the National Agreement. When this was done, on November 11th, all of the benefits began and some of these were retroactive to October 25th. In other cases where benefits were tied to a sixty or ninety day waiting period from the date of settlement that date was postponed until sixty or ninety days after November 11th, which was the date on which the final local plants settled their local issues and ratified the National Agreement."

■ We find from the record that the operation of the several plants of Ford Motor Company are so complex and so highly integrated as to have made it impracticable

to so operate the Nashville glass plant as to employ the appellants during the period from October 25th to November 11th, and that it cannot be deemed to have been a separate factory within the meaning of Section 50-1324, subd. D(2), T.C.A.

In this case the company's delay in recalling the appellants to work was because the local issues had not been settled by agreement in many of the plants. The labor dispute was in active progress under the terms of the master agreement until the local contracts were made in all the plants and that did not occur until November 11th.

These facts differ from *Davis v. Aluminum Co. of Amer.*, 204 Tenn. 135, 316 S.W.2d 24. In the *Davis* case the strike had been settled and the employees were not recalled to work for some time because of the need to repair some of the equipment. This language is from the opinion:

"And this Court's opinion is that an employee is not disqualified within the meaning of Code, Section 50-1324, subd. D from receipt of unemployment benefits of the Tennessee Employment Security Law by reason of unemployment following settlement of all matters in controversy in the labor dispute for the period thereafter required for repair of damages done the plant by the dispute."

In the *Davis* case the delay occurred because of the time required for repairs; here it was because the labor dispute was in active progress.

In at least four other states employees of Ford Motor Company have made claims of the same kind as that

which we now are considering. All grew out of the 1967 Ford Motor Company strike and in them the claimants sought unemployment compensation benefits for that time which following ratification of the master and local contracts and the time the company recalled them and resumed full production.

In New Jersey and California the appeals boards held the claimants to be ineligible for benefits and the Michigan Court of Appeals in *Burrell v. Ford Motor Co.* [1970], 24 Mich.App. 651, 180 N.W.2d 645, affirmed the judgment of the Circuit Court which in turn had affirmed the action of the appeals examiner and appeal board who had declared the claimants ineligible for benefits. The circumstances of all these cases are similar to that which we now have before us. The Supreme Court of Minnesota in *Johnson v. Ford Motor Co.* [1971], 184 N.W.2d 786, held the claimants were entitled to benefits.

For the reasons we have given we overrule the appellants' assignment, dismiss their appeal, and affirm the decree of the Chancery Court. The costs will be decreed against the appellants and their sureties.

DYER, CHIEF JUSTICE, CRESON and HUMPHREYS, JUSTICES, and JENKINS, SPECIAL JUSTICE, concur.