Christine FORD, Plaintiff–Appellant,

v.

Rayburn A. TRAUGHBER, Commissioner of the Tennessee Department of Employment Security, and the Veterans Administration Medical Center, Defendants–Appellees.

Court of Appeals of Tennessee, Middle Section.

March 13, 1991.

Application for Permission to Appeal Denied by Supreme Court June 24, 1991.

Russell J. Overby, Linda L. Narrow, Legal Services of Middle Tennessee, Inc., Nashville, for Christine Ford.

Charles W. Burson, Atty. Gen. & Reporter, Stuart F. Patton, Asst. Atty. Gen., Nashville, for Rayburn A. Traughber, Comm'r of Tennessee Dept. of Employment Sec.

Joe B. Brown, U.S. Atty., for M.D. Tennessee, Robert C. Watson, Asst. U.S. Atty., Nashville, for Veterans Admin.

## OPINION

LEWIS, Judge.

Appellant Christine Ford applied to the Tennessee Department of Employment Security for unemployment compensation benefits. The Board of Review denied appellant's claim after finding that appellant "is not able and available for work under T.C.A. § 50–7–302(a)(4)." The trial court affirmed the decision of the Board of Review after determining that there was "substantial material evidence in the record to support the Board's decision."

On appeal, appellant contends that the Board of Review found, and the trial court affirmed, that appellant was not entitled to benefits solely because she was not able to return to her former employment as a nursing assistant. She insists that this is not the test but that she is entitled to benefits if she is "able to work, available for work and making a reasonable effort to secure work" that she is reasonably qualified to perform.

Appellant's employment with the Veterans Administration Medical Center (Medical Center) began in 1980. She was employed as a nursing assistant at the time her employment with the Medical Center was terminated on 30 November 1988.

Her job as a nursing assistant required her to care for patients. In her care of the patients, she was, among other things, required to bend, stoop and lift weights in excess of forty-five pounds.

At the hearing before the Appeals Tribunal, appellant testified that she became unable to perform her duties as a nursing assistant because of a back condition aggravated by her work. She testified that she could perform light duty work if it did not involve lifting over twenty-five pounds.

On cross-examination appellant testified that she was unable to do "day work" and that she had a doctor's statement to corroborate that she could not do "day work." She insists that "day work" required physical labor that aggravated her back condition. She did not offer the doctor's statement.

Prior to her termination and subsequent to her "back problems," the Medical Center placed appellant in a temporary position in its pharmacy service where her duties included packaging and wrapping medication to be mailed to patients.

On or about 17 October 1988, the Medical Center submitted to appellant a notice of appellant's proposed separation for disability due to her inability to perform her job as a nursing assistant. On that same day appellant requested a permanent assignment to the pharmacy service.

On 16 November 1988, the Medical Center notified appellant she would be terminated effective 30 November 1988.

In January 1989, appellant applied to the Medical Center for the position of dental assistant.

The Medical Center rejected appellant's applications for pharmacy technician and dental assistant on the ground that appellant did not qualify for either position.

On her application for the position of pharmacy technician, it is noted: "Ms. Ford stated on her application that she would not accept a position below GS–4. This grade level requires six months specialized experience equivalent to the next lower grade. She does not possess this experience." The position of pharmacy technician also required appellant to do lifting of over forty-five pounds.

On the application for dental assistant, it is noted: "Ms. Ford stated on her application that she would not accept a position below GS–4. This grade level requires (GS–4) one year qualifying experience equivalent to the next lower grade. She does not possess this qualifying experience as stated on her application."

Prior to her termination, appellant was examined and treated by at least three doctors. Dr. Davis and Dr. Stanley Hobbs were private physicians selected by appellant. Dr. Watson was selected by the Medical Center to examine and treat appellant.

The record shows that Dr. Watson concluded in his report that Dr. Davis' reports were insufficient to support a causal connection between appellant's ongoing disability and her injury while at work on 20 August 1986. Dr. Watson also concluded that Dr. Davis' report admitted that there was no medical reason for placing appellant on light duty and that Dr. Davis did so because of appellant's subjective complaints of pain in her back.

Dr. Davis' note of 29 June 1987 stated in part: "I think I need to find out more about her, because she keeps staying off work and she had what I considered to be a fairly minor injury and I am having some difficulty finding enough physical evidence that she does have serious pain."

Subsequently, Dr. Davis recommended light duty for appellant. The light duty restrictions applied only to lifting and not to bending or stooping.

Because of the light duty restrictions, appellant was assigned on a temporary basis to the pharmacy. The pay scale for the job appellant was performing in the pharmacy was below that of nursing assistant. However, the Medical Center continued to pay appellant the same salary she received as a nursing assistant.

■ The Tennessee Employment Security Law was enacted for the purpose of alleviating the economic insecurity of an individual and his or her family due to unemployment and is for the benefit of those who are unemployed through no fault of their own. Tenn.Code Ann. § 50–7–102; *Davis v. Aluminum Co. of Amer.*, 204 Tenn. 135, 316 S.W.2d 24 (1958). The statute is to receive a "liberal interpretation by the courts." *Weaver v. Wallace*, 565 S.W.2d 867, 869 (Tenn.1978).

The standard of judicial review applicable in unemployment compensation benefit cases where the trial court sits as an appellate court is set forth in Tennessee Code Annotated Section 50–7–304(i)(3):

> In determining the substantiality of evidence, the chancellor shall take into account whatever in the record fairly detracts from its weight, but he shall not substitute his judgment for that of the board of review as to the weight of the evidence on questions of fact. No decision of the board of review shall be reversed, remanded, or modified by the chancellor unless for errors which affect the merits of the final decision of the board of review.

If there is substantial evidence to support the decision of the Board of Review, the Board's decision is conclusive, and the trial court's review shall be confined to questions of law. *Perryman v. Bible*, 653 S.W.2d 424, 429 (Tenn.App.1983). This Court must apply the same standard as the trial court in reviewing the trial court's decision in an unemployment compensation case. *See Armstrong v. Neel*, 725 S.W.2d 953, 955 (Tenn.App.1986).

Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration." *Southern Ry. Co. v. State Bd. of Equalization*, 682 S.W.2d 196, 199 (Tenn.1984) (citations omitted). Courts should not disturb a reasonable decision of any agency which has expertise, experience and knowledge in a particular field. *Id.*

Tennessee Code Annotated Section 50–7–302(a)(4) provides in pertinent part as follows:

An unemployed claimant shall be eligible to receive benefits with respect to any week only if the commissioner finds that all of the following conditions are met:

(4) He is able to work, available for work, and making a reasonable effort to secure work. In determining whether the claimant is making a reasonable effort to secure work, the commissioner shall consider the customary methods of obtaining work in the claimant's usual occupation or any occupation for which he is reasonably qualified, the current condition of the labor market, and any attachment the claimant may have to a regular job.

The Tennessee Supreme Court, in *Reese v. Hake*, 184 Tenn. 423, 199 S.W.2d 569 (1947), held:

[A] claimant must be able to accept suitable employment if offered as a condition necessary to become eligible for unemployment compensation, and the burden of establishing a claimant's right to benefits under the Unemployment Compensation Law rests on claimant and a finding by an unemployment compensation commission that a claimant was not eligible for benefits on the ground that such claimant was not available need not be supported by affirmative, substantial evidence tending to show that she was not available for work, since the burden is on the claimant to make a prima facie case.

*Id.* at 427, 199 S.W.2d at 570 (citations omitted). The burden here was on appellant to show that she was able and available for work.

A person who quits a job is disqualified from receiving benefits unless there is good cause connected to the work. *Thach v. Scott*, 219 Tenn. 390, 397, 410 S.W.2d 173, 176 (1966). Only a disability or illness that is directly attributable to the job is sufficient good cause. *Cawthron v. Scott*, 217 Tenn. 668, 670, 400 S.W.2d 240, 242 (1966). In the present case plaintiff did not voluntarily quit her job. She was discharged by her employer. Therefore, the causal connection between plaintiff's injury and her job is irrelevant.

For the plaintiff to be eligible for benefits, she does not have to show that she is able to perform and available to perform the duties of her former employment, but she must show that she is "able to work and available for work" for employment for which she is reasonably qualified.

Where a claimant was unable to do his former work because he could not stand for long hours on a concrete floor but was qualified for work and had applied for other work, he was able and available for work. *Department of Indus. Relations v. Chapman*, 37 Ala.App. 680, 74 So.2d 621 (1954). *See also Harris v. Woodcrest Mobile Homes*, 359 So.2d 243 (La.Ct.App. 1978); *Miles v. Review Bd. of Indiana Employment Sec. Div.*, 120 Ind.App. 685, 96 N.E.2d 128 (1951).

The Board of Review adopted the decision of the Appeals Tribunal. The Appeals Tribunal set forth its finding and concluded as follows: "The medical proof shows no causal connection between plaintiff's injury and her job. Claimant has restricted her

availability to work because of the medical restrictions. The Appeals Tribunal finds the evidence to show claimant is not able and available for work under T.C.A. § 50–7–302(a)(4)."

Plaintiff insists that implicit in the findings and conclusions is that plaintiff is not entitled to benefits solely because she is not physically ably to return to her last employment.

We respectfully disagree. The Board, and the Chancellor in affirming the Board, simply held that plaintiff was not able or available for work.

It is without question that plaintiff is not physically able to perform the work of her last employment. The question is: Does the record show that plaintiff has carried her burden of showing that she is "able to work, available for work and making a reasonable effort to secure work," Tenn. Code Ann. § 50–7–302(4), at a job that she is reasonably qualified to perform.

■ Following our review of this record we are of the opinion that the plaintiff has failed to carry her burden. She has placed salary restrictions and restrictions upon her physical ability to work far greater than the actual medical restrictions.

Dr. Davis gave plaintiff a light duty slip based on her subjective complaints of back pain. He stated in his 4 January 1988 report:

> [Plaintiff] has a major back problem which I cannot prove. She says she has a lot of pain and she wants to stay on light duty. In giving her a light duty slip, however, I have no basic reason to give her this light duty slip except that she says she hurts.

Dr. Hobbs, who imposed the restriction that plaintiff not lift more than twenty to twenty-five pounds, in his 6 October 1988 report to the Medical Center stated in part: "Her back condition would probably make it difficult for her to do heavy lifting, such as lifting a patient from the bed into a chair, although she may be able to do this.... She certainly may attempt to work without risking any specific damage as such to her spine."

Plaintiff claimed at the Appeals Tribunal hearing that she was unable to do bending or stooping. However, none of the doctors who treated or examined her imposed any such restrictions.

Plaintiff, after filing her initial claim, admitted that she was qualified to do "day work" but stated she would never do such work again. She contended she has a doctor's statement showing she was physically unable to do day work. However, she never produced such a statement.

The initial agency decision found that she was qualified but unwilling to do "day work."

Plaintiff applied for two positions with the Medical Center. Her application for employment as a pharmacy technician was denied. On that application it is noted that she did not possess the necessary experience as a pharmacy technician. The record also shows that the pharmacy technician position requires heavy lifting of over forty-five pounds. On her application for dental assistant, it was also noted that she did not possess the "qualifying experience as stated on her application." The record shows that the position of dental assistant requires long periods of bending, standing and walking and also requires the dental assistant to help patients in and out of the dental chair.

Plaintiff also placed salary restrictions upon her acceptance of either the pharmacy technician or the dental assistant position. She would not accept a position level less than GS–4.[1]

Plaintiff argues that she demonstrated her ability to work in the Medical Center Pharmacy since she worked there for a period of six months. She was temporarily assigned to the Medical Center Pharmacy. However, during that period of time, she was paid the pay scale for a nursing assistant. This pay scale was in excess of that for the position in the pharmacy. She had stated that she would not accept a position less than GS–4. The position for which she was qualified in the pharmacy was less than a GS–4.

---

1. GS–4 corresponds to the rate at which employees are compensated.

Plaintiff also contends that she has applied for jobs with a number of other employers. However, no evidence of these applications are properly before the Court. There is no evidence in the record that the job search form was ever entered into evidence or that it was considered by the Appeals Tribunal or the Board of Review.

However, even if we considered the job search form, it would be of little help to the appellant. This form does not disclose what positions were sought by the appellant. The form also does not indicate whether these positions involve lifting weights which are inconsistent with the restrictions imposed by the appellant's physicians.

The plaintiff was properly denied benefits on the basis that she was not able and available for work. She voluntarily imposed restrictions upon her availability for work. She imposed medical restrictions which were beyond those restrictions set by her doctors, and she also imposed financial restrictions. She voluntarily chose to limit her availability for work.

The judgment of the Chancery Court affirming the Board of Review's decision is affirmed with the cause remanded to the Chancery Court for the collection of costs, which are assessed to plaintiff, and for any further necessary proceedings.

TODD, P.J., and KOCH, JJ., concur.